Parker, C. J.,
delivered the opinion of the Court. The plaintiff in this action demands damages against the defendant, for an alleged
*51 wrong in interrupting him in the use of a way or passage from land in the rear of a certain tenement, of which he is seised in fee, over land adjoining, which belongs to the defendant, into the square sometimes called Church Square, and sometimes Cornhill Square, which is in the rear of the block of buildings standing upon the former site of the old brick meeting-house.
His counsel would derive his right to the easement claimed, by showing from the facts agreed, that he acquired it by prescription, or by so long a use as raises a presumption of a grant, or by operation of law, as a way of necessity ; and he expects to prevail upon one or other of these grounds.
With respect to a prescriptive right, as those terms are commonly used, that is, an adverse claim and exercise of the right for sixty years, there can be no pretence of succeeding upon this ground. For the plaintiff’s title to the estate, to which the easement is supposed to be appurtenant, did not commence until about six years before the commencement of the action; and * before that period he had held the same estate under a lease from year to year, for three years, which was the first connection he ever had with the estate. Nor can he avail himself of any antecedent use of the easement by his grantor, sufficient to support a prescriptive title; for he did not become proprietor until the year 1801, less than twenty years ago. Previously to that period, as far back as the year 1723, both the estates were owned by one and the same person, Deering being the proprietor in that year, Ap thorp from the year 1765 to the year 1767, and from that time Bethune, until his death in the year 1785. During all this time, no such right, as is contended for, could have existed. For it is impossible for a man to have an easement or right of way in his own estate. A passage de facto may have been used by the occupants of the northern house, over the land belonging to the southern tenement; but this must always necessarily have been by permission of the proprietor of both estates; and no one, who afterwards became proprietor of the estate, to which the passage is supposed to be appurtenant, could set up a right growing out of such permission.
Prescription, in the ancient sense of the word, is founded upon the supposition of a grant; and therefore it is, that the use or possession, on which it is founded, must be adverse, or of a nature to indicate that it is claimed as a right, and not the effect of indulgence, or of any compact, short of a grant. The death of George Bethune, the elder, having happened but thirty-two years since, the title by prescription must wholly fail.
Then it is said, that the easement was created by grant, and that the assignment by the commissioners under the statute must be *52 considered as a grant to Dunkin and his wife, who was the daughter and one of the heirs of Bethune.
This cannot be inferred from the words of the assignment. The ' northerly tenement is set off, by metes and bounds, to Bunkin’s wife; and no easement is given, unless by the general terms “ all the privileges * and appurtenances thereto belonging.” Nor is there any exception or reservation in the assignment of the southerly tenement to English and his wife, another daughter of Bethune, to whom that estate was set off without any encumbrance whatever. Admitting that the words “ privileges and appurtenances” are sufficient to pass a right of way in actual existence, which the authorities seem to indicate, yet such words will not create a new easement; and it has been observed, that none such existed at the time these estates were divided. Nor is it necessary to give these words so extensive a meaning, in order that they may have some operation ; for the privilege of using a pump or well was appertaining to both these estates when created, and it was proper, if not necessary, for the commissioners, by some general words, to secure the continued use of it to each, after the division should take place.
If the words had been with all ways therewith used, or heretofore used, the evidence of the actual use of this way, before or at the time of making the partition, would have been material, and perhaps decisive, to show that the way now contended for ought to pass appurtenant to Bunkin’s estate.
The fact that English, when agent of both estates, in leasing the northern house, gave this right, and reserved it in the lease of the southern house, proves only that he chose to accommodate his tenants, but created no right adverse to the owners of the southern house; and the. fact, that Bunkin made the same provision, has no greater bearing upon the question. But the necessity of providing for it by lease, and the omission of granting it by the deed, when Bunkin conveyed to the plaintiff, is very strong proof that the easement was not supposed to exist by law, in the proprietor or tenant of the northern house.
But.it has been argued, that the possession and use of this privilege has been such as to furnish presumption of a grant. If this were so, that presumption must be judged of by the jury, and not by the Court. * We apprehend, however, if the cause were before a jury, there is not evidence in the case from which a grant could be presumed. No time, before the division of the estate among the heirs, could be taken into view "for the purpose ; because, as has been before observed, there could not have been, before that time, any adverse possession, the whole being *53 m Bethune, or his grantors. And it is adverse possession only, upon which a presumption of a grant can arise, or a possession claimed or used as a rightful possession. Since that period, sufficient time has not elapsed to justify the presumption of a grant from English and his wife. No period short of twenty years has been allowed sufficient for this purpose in this country; nor has it been definitely settled, that any shorter period will suffice in England. Perhaps, by analogy to the time when the, right of entry is taken away from one having a right of possession, the term of twenty years has been established as the proper period, to found a presumption of this kind upon. There seems, at least, to be no good reason for diminishing the time; and to admit of it in all cases, when only a few years’ use of another’s land has been enjoyed, would be likely to defeat the provisions of the statute, which requires that all rights and interests in lands and tenements shall pass only by deed or writing. (4)
The third point insisted on tor the plaintiff is, that a way exists of necessity over the ground of the defendant, from the rear of the premises belonging to the plaintiff.
But this is by no means tenable. This right depending upon necessity, exists only where the person claiming it has no other means of passing from his estate into the public street or road. In the case before us, there is an avenue, and one which was provided when the house was built, leading from the street to the land in the rear of the house ; besides which, the house abuts on the street or square; so that the plaintiff may open a passage, if he has not one already. A right like this is to be construed strictly. In the case of * Pernam vs. Weed, (5) the plaintiff had no [ * 56 ] other way to get from his land to the public street; and the front land had been taken from him invita by his creditor. In other cases, when a man has granted land surrounded by land of his own, which he retains, he is supposed tacitly to have granted a right of way, upon the well-known principle, that when a man grants any thing, he is held to have granted every thing necessary to the use and enjoyment of the thing granted. It may well be doubted whether, if a man voluntarily take a conveyance of land, which is surrounded on all sides by land of his grantor and others, he can enforce this right of way, under a plea of necessity, against any one but him who conveyed to him. Now, in the case at bar, the plaintiff must be held to have voluntarily purchased, knowing the situation of the estate; and if he had no access to the back part of it, but over the land of another, it was his own folly; and he *54 should not burden another with a way over his land, for his convenience.
The idea of necessity m this case seems to be referred altogether to the ancient barn, which formerly stood upon the land, now owned by the plaintiff, in the rear of the house. But that bam has not been standing for sixteen years, and there is no reason to suppose that it had been used as such within the last thirty years. Now, if it could be maintained that a barn was necessary within a town or city, still the plaintiff cannot be supposed to have purchased with a view to the enjoyment of one which had disappeared long before he purchased ; and he cannot now found a claim upon a necessity, which arises from a desire to erect a new barn upon the same site.
We think the plaintiff not entitled to recover upon either of the grounds, upon which his counsel has endeavored to support his action. According to his agreement, therefore, he must be called. Plaintiff nonsuit.

 Stat. 1783, c. 37.

 2 Mass. Rep. 203