Putnam J.
dissenting. It was testified in this case by Enoch Tappan, that he remembered this way 50 years, and that it was called the town way ; that it is fenced nearly on the line, on the south side ; and that it is much used by inhabitants of Newbury. Stephen Tappan swears that he has known this way for 60 years, and that his father used to say that the town owned it. Jacob Merrill testified that it had been used for 27 years according to the straight lines as far as the upper bridge. It is literally true, that for a time beyond the memory of man there has been a way from Low street to Turkey hill, through gates at each end of it. The eastern part was varied in its course 27 years ago, and has been used ever since according to the variation. Bridges have been built over this way, and the town has repaired it, from time to time, for more than 60 years. It is true that it was sometimes called a drift way. It has also been used by persons who were not inhabitants of Newbury. This would have been the case if it had been laid out as a private way for the town according to the statute. It happens in all town ways ; and this circumstance is to be taken into consideration in weighing the evidence.
I am aware that the act of repairing does not prove conclusively whether it was a town way or a highway. It is however good evidence to prove that it was either one or the other ; and if it be either, the defendants are bound to repair *63 it. The defence set up, that if any way is proved it is a highway, which it is not alleged, to be in the indictment, ought to be clearly made out, inasmuch as it is perfectly immaterial, in regard to repairs, whether it be one or the other. It is more favorable to the defendants to consider it as a town way, because then they can discontinue it.
But I cannot but think, that what the ancient witnesses testify that their fathers declared in their day upon this matter, is of the greatest weight. They called it the town way, when speaking concerning it. They said the town owned it. If it had been a public highway, that language would not have been used. That evidence is much stronger, than the fact so much relied upon in the argument, that a clerk of the proprietors should, in their records, have described an estate bounding upon this place, as bounding on a highway ; for in the latter case the way is but an incidental matter, in the former it is the principal subject. Those old people were speaking of the rights of the town in the way.
If, however, it be true, as is intimated by the learned Chief Justice, in giving the opinion of the Court, that towns cannot acquire a right of way except in the mode provided by the statute, then the judgment should be for the defendants ; because there is no record produced, that it was ever in fact laid out according to the statutes of the commonwealth. If it ever was, the record probably has been lost.
But I am of opinion, that the inhabitants of a town may prescribe for a way, as well as individuals, or as the inhabitants of the commonwealth may. The modes of laying out private ways and highways by the statute, were cumulative provisions ; leaving the common law touching ways by prescription unaltered.[1]
In 17 Vin. Abr. 256, Prescription, A, in notis, it is laid down, that prescription may be, that the usage of the vill of D. has been time out of mind, that the inhabitants &c. have had a way over the land of the plaintiff to the church &c. ; and that inhabitants may prescribe for an easement; contra in *64 profit apprender out of another’s land. And that distinction will ieconcile all the cases.
In Spear v. Bicknell, 5 Mass. R. 130, the allegation was, that the inhabitants of Quincy were seised of a close, which was part of a highway, and that they, “ and all those whose estate they have in the close, have immemorially, for themselves, their tenants and occupiers, kept up and maintained upon the same highway a gate, at all such seasons of the vear as the same should be found necessary for the preservation of the said close, and of the grass and emblements, to be shut by all persons who should open and pass through the same.” Parsons C. J. says, “ This prescription may he good in law, for it might have a lawful commencement.”
This Court, in the case of Hill v. Crosby, in Middlesex, [vide post 466] lately had occasion to consider and fully to adopt the modern doctrine, that a right of way may be acquired by usage for 20 years under a claim of right unexplained. That was in the case of an individual; but I do not perceive any difference, in principle, whether the claim is by an individual or by a town. It only requires more evidence in the latter case than in the former, or it may be more difficult for a town to establish the right, than it would be for an individual; but the right, when once established, is to be maintained and exercised alike by both.
Individuals are permitted to claim a right of way by prescription, over land belonging to the inhabitants of a town. That was decided in the case of The Inhabitants of the First Parish in Gloucester v. Beach, in Essex, not reported.* It *65 is true that the evidence which the defendant in that case produced, was held not sufficient to establish the right of way. In other words, the usage was explained by the plaintiffs to have been by their leave and license, revocable at their pleasure, and not under an adverse claim of right. I do not know any reason why we should not apply the same rules in favor of the inhabitants of a town, when they claim rights of way by usage, as we do when enforcing such claims against the inhabitants.
Now this usage or prescription is received as evidence of a grant, and if it be true that the inhabitants of a town could *66 not take by grant, then it ought not to prevail. But I do not perceive the force of the objection. Suppose a grant made recently by the owner of the land to the inhabitants, of a right to pass as on a town way laid out by the selectmen, if they will accept it, and they should accept it by vote ; it would in my opinion become a town way immediately. .If the grant were lost or not produced, and the usage had been to pass over the land as over a town way, and the town had by their acts manifested an acceptance of the way, I see no reason why it should not be, to all intents and purposes, a private way for the inhabitants, just as if it had been laid out according to the statute.
*67 This point being in this manner settled seems also to settle the other, respecting the gates which have been placed, for more than forty years certainly, upon this way. It only proves that the right obtained by usage was so limited and encumbered by the owner of the land, and so accepted by the town. By the St. 1786, c. 81, § 5, gates and bars on a highway are not removable as nuisances, if erected and continued by the Court of Sessions. The gate on the way leading from Northampton to Springfield, for example, is it abatable as a nuisance ? It has been there as long, and probably for a much greater length of time, than the gates on the way in Newbury. Suppose the record cannot be *68 found, that the Court of Sessions authorized the erection and continuance of the gate at Northampton, would it follow that it is to be considered a nuisance ? I think not. It is to be presumed that the public took the right of way subject to that encumbrance. The same reasoning applies to- the gates leading through the Deerfield meadows.
By the statute last cited, any justice of the peace may remove gates and bars on any private way, unless erected by the leave of the town, or by the person for whose use and benefit the way was laid out. Now does it follow, because the record evidence cannot be produced that the town granted leave to the owners of the land to put up these gates, that therefore a justice of -the peace might remove them as nuisances ? I think not, and for the reason before suggested. The agreement which is to be presumed from the usage, was founded upon the right that the owners of the land might keep up gates. If that had not made a part of the contract, the owners would undoubtedly have had a claim to more damages for the grant of the right of way.
With the greatest respect for my learned brethren, I am obliged to give my opinion, that the defendants are not guilty in keeping up the gates in the manner they have done, but that they are guilty of the nuisance in not repairing the town way. But a majority of the Court having a different opinion, the judgment therefore is, that the defendants be discharged from this indictment, and that they go without day

 See Pritchard v. Atkinson, 3 N. Hamp. R. 335.

 The following is a note of the case here referred to.
The Inhabitants of the First Parish in Gloucester versus William Beach.
This was an action of trespass quare clausum, &c. The defendant pleaded a right of way, first, by prescription, and secondly by a non-existing grant by the plaintiffs to one Penhallow, under whom the defendant justified, as servant; the plaintiffs traversed the prescription and the grant.
The facts on the trial, before Putnam J., at the sittings after the October term 1821, in Essex, were in substance as follows: — The close over which the defendant claimed the right of way, had been occupied by the plaintiffs for more than sixty years as a site for their meetinghouse. It had never been fenced till within a year or two past; but those parts of it which were not actually covered by the meetinghouse, had remained open at each end *65 of the meetinghouse, and also back of it, and the inhabitants of the parish, #s well as other persons, used to pass without any interruption over the open land, to and from the street and back of the meetinghouse, as they pleased. The defendant claimed a right to pass from the street across one end of the close to Penhallow’s lot, which adjoined the back part of the close, and on which the owner of that lot had built a barn in the year 1764, and a cordage house adjoining the same, more than thirty years before this suit; and no other passage had been used to the barn except over the plaintiffs’ close. The defendant relied upon the usage as evidence from which the jury might presume a grant of the way. There was no evidence of a usage for sixty years, but there was fbr more than twenty, namely, from the year 1764.
The plaintiffs contended, that it was by the indulgence of the parish, and not under an adverse claim of right, that the defendant and those under whom he justified, had used to pass over the close; and that question was left to the jury, with a direction by the judge, that if the passing had been continued uninterruptedly for more than twenty years, adversely, they might presume a grant; but if such usage had been by indulgence and at the will of the plaintiffs, then the verdict must be against the defendant. The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial on the ground of a misdirection; contending that no such presumption of the grant of a way ought to be made against the plaintiffs, or any corporation like theirs, under the facts in this case.
At the October term 1822, J. Pickering and Nash, in support of the motion for a new trial, contended that the modern English rule of presuming a grant of an easement, after a user of twenty years, was not applicable to the case of a corporation like the plaintiffs; and that there had not been any adjudication, as it was believed, in which that rule had been expressly adopted by our courts to the extent which would be necessary for the defendant’s case. That in this State we have a public registry of deeds, which precluded the necessity of such a presumption; and that the defendant ought not to have the benefit of it, unless he should first show, that the public records have been destroyed, or that he has examined them. If, however, the English rule was adopted here, then it was necessary to. consider the principles on which it rested, in order to determine how far it was *66 applicable to cases like the present. This rule, like many others, had various limitations; as for example, in the case of minors, feme-coverts and others, who from legal incapacity cannot make a grant, and against whom, of course, there can be no presumption of one; of trustees, in whom it would be a breach of trust to convey; Keene v. Deardon, 8 East, 264, per Lord Ellenborough ; of a tenant for life, generally, whose acts do not bind the reversioner: 2 Saund. 175 d, Williams’s notes; of a parson or rector, whose acts likewise are not binding upon his successor; Wall v. Nixon, 3 Smith’s Rep. 316, and Barker v. Richardson et al., 4 Barn. & Ald. 579; of a tenant for years, his landlord not having any knowledge of the user; Daniel v. North, 11 East, 372. There were other exceptions, arising from the nature of the property itself, as in the case of navigable rivers; Vooght v. Winch, 2 Barn. & Ald. 662; and rights of common; Dawson v. Duke of Norfolk, 1 Price, 246. Now the plaintiffs’ close adjacent to their meetinghouse is necessarily kept open, that it may be conveniently used for the horses and carriages and other accommodations of persons who attend religious worship there, as well as for the ordinary occasions of the parish; just as training fields, commons, landing places &c., are kept open. If the close had always been kept shut up, and the parish had notwithstanding suffered the defendant alone to use a passage way over it, his rights might have been different. Further; the user or possession in these cases must be such as to occasion an injury to the plaintiff; Cooper v. Barber, 3 Taunt. 99, and Daniel v. North, 11 East, 374. per Lord Ellenborough ; but from the nature of the property, and the public use to which it was appropriated, this could not take place in the present case. The plaintiffs also constitute a corporation, which was originally the town; they can act only by a corporate vote, and no record of any vote appears; they are merely trustees holding this property for a public use for the individuals who attend religious worship there. The defendant was himself an inhabitant of the town, and though not a member of the parish was a resident within it, and consequently was conusant of the rights of the parish in the property, and must be presumed to have had notice of the various uses made of it by the parish, and of the permission they had given for the erection of the town pound, the engine house, &c. It was also an objection to the defendant’s claim, that the way *67 was wholly indefinite ; if the evidence proved any right, it showed a general right to pass over any part of the unenclosed land. Upon the whole evidence, the defendant had nothing more than a license, which the plaintiffs might revoke.
Saltonstall and Cummins, for the defendant, contended that the presumption of a grant might arise from the user, as well against a corporation of this kind, as an individual; that the rule of law was general, and in all cases it was a question to the jury, whether the use of a way or other easement was uninterrupted and unexplained; Griffith v. Mathews, 5 T. R. 296; Campbell v. Wilson, 3 East, 294; Holcroft v. Heel, 1 Bos. & Pul. 400; Jackson v. Stephens, 13 Johns. R. 495. The rule of law is modern, but is well settled and fully recognised here, that a grant may be presumed after twenty years, if unexplained; Gayetty v. Bethune, 14 Mass. R. 49. The argument from the provision of our law as to the registry of deeds, is as strong against the grant of an individual, as of corporations, who it was said could only act by a vote; corporations have no more right than individuals, and may be prescribed against. The property here too is more like private than public property, and the parish have so treated it by recently enclosing it; but even if public, the roles of law are the same ; a public body may as well dedicate property to public uses, as an individual. It is not analogous to the case of trustees; they cannot grant, but a parish may. If the question arising in this case was properly submitted to the jury, then a new trial ought not to be granted, unless the verdict is against evidence. Here there were many circumstances to strengthen the presumption of a grant [which the counsel stated in detail] and the use was clearly adverse and equivalent to a claim as of right. The use made by the defendant of the passage was peculiar and unlike that made by any other persons; it was the only passage to a barn which had been on the lot more than forty years. The verdict must be supported, unless in the 'opinion of the Court the presumption of a grant can never arise against a local corporation leaving land unenclosed for any length of time. There was no misdirection; the question put to the jury was, whether the way was by indulgence or under a claim of right.[1]
At April term, 1823, a new trial was ordered.

 Emerson v. Wiley, 7 Pick. 68.