Hornblower, C. J.
By the evidence as set forth in the bill of exceptions, it appears, that originally, the stream in question, after crossing the defendant’s land, entered upon and ran some distance on land now belonging to the plaintiff, forming thereon an irregular curve; and then returning to the defendant’s land reentered the same at another point. That about forty years before the commencement of this action, the person under whom the plaintiff claims, made an embankment across the stream in that part of it, in which it curved through his land • and thence conducted the water by an artificial ditch along his lands, letting it out in different places to irrigate his meadows and water his cattle. So that it never returned as it had been accustomed to do into the defendant’s land. That the plaintiff and those under whom he holds, had kept up the embankment and enjoyed the water in manner aforesaid, quietly and without legal interruption until the year 1833, when the defendant, by means of a dam erected on his own land across the stream, before it entered on the plaintiff’s land, diverted the whole of the water from the *313 plaintiff’s land. It further appears that the land now belonging to the defendant, and which he owns in right of his wife, formerly belonged in fee simple, to one Barnabas Horton, who became seized thereof in the year 1799, and remained so seized and without being under any disability until the 7th of December, 1809, when he died, having first devised the same premises to his daughter Patty, who was then an infant, and did not attain her full age until the 23d of September, 1823, and who about one year thereafter, married the defendant, Thorpe. That the first diversion of the natural course of the water, was made in the lifetime of said Barnabas Horton, and after he came into possession thereof, as owner in fee. So that, with the exception of about ten years, out of the forty years that have elapsed since the first diversion of the water, the lands now occupied by the defendant had belonged to a person under disability; a part of the time, from infancy, and part thereof from coverture.
Upon the case thus made the plaintiff’s counsel called upon the court to charge the jury, that the peaceable enjoyment of a water course for twenty years, in a particular manner, vests in the occupant a legal title so to use and enjoy it; and that, in analogy to the statute of limitations, if the twenty years once begin to run, against a person under no disability, as it did in this case against Barnabas Horton, it continues to run against him, his heirs, devisees and assigns; and is not arrested by any subsequent disability in any of them.
On the other hand, the counsel for the defendant contended, and so called upon the court to charge, that when time begins to run against a person under no disability, it does not continue to run over subsequent disabilities, either in him or in any person claiming under him ; but that in analogy to the provisions of our statute of limitations, in respect to actions on judgments and specialties, and for the recovery of the possession of lands, the periods of such disabilities, if any, are to be deducted from the time of the enjoyment; and that unless the plaintiff had enjoyed the easement for the space of twenty years over and above the intervening disabilities, he acquired no title. Mr. Justice Ford, before whom the cause was tried, did, however, charge the jury that twenty years uniform and quiet enjoyment of a stream of *314 water, in a particular way vested a right in the occupant to continue the enjoyment of it, in that way, even though it had commenced by a wrongful diversion; that the intent of the law was, to quiet men’s estates in such incorporeal rights, after that length of time, in analogy to the statute of limitations; that it allowed time enough for an injured party to seek redress; that his making no legal claim for twenty years was presumptive evidence, that the alteration in the stream had been originally made with his consent, though the direct proof of it might be lost by the removal or death of witnesses, loss of papers, or other accidents of time. That in analogy to the statute of limitatious, the twenty years would not begin to run against an infant, a feme covert, or insane person; but if it once began to run against a person under no disability, it did not stop for any subsequently occurring disabilities; and that such had been the construction given by this court to our statute of limitations, in the case of Den ex dem, Clark v. Richards, 3 Green’s R. 347.
This charge is complained of by the counsel for the plaintiff in error, in the first place as too narrow and restricted in its terms, tying the jury down to the letter of the statute, and substituting its enactments as the rule by which they were to be governed, instead of the mere presumption which has been raised up by courts of law and equity, in analogy to the statute of limitations, for the settling of cases hot within the terms of that statute; and thus withdrawing from the jury the right to pass upon those circumstances, (the infancy and subsequent coverture of the defendant’s wife,) which had been proved and relied on by the defendant, as sufficiently rebutting the mere presumption, arising from lapse of time.
And secondly, that even if the case of an easement is within the terms of the statute, or is to be governed by strict analogy to its provisions, the. charge was wrong, in so far as it adopted the construction given to that statute by this court in the case of Den v. Richards, above cited.
In reference to this last objection I will only say that I have re-perused with great care the reported opinions of the Judges, by whom the case of Den v. Richards was decided; and notwithstanding the able and ingenious arguments, which were so res *315 peor fully submitted to the court by the counsel for the plaintiff in error, in opposition to those opinions, the result of my further reflections upon the subject, has confirmed me in the soundness of the decision of the court in that case. It seems to me to be a matter beyond all dispute, that it was only by judicial construction, that the courts in England arrived at the conclusion, that the disability which saved the operation of the statute, was the disability of the person to whom the cause of action first accrued ; and it is equally clear to my mind, that our statute, (to use the language of Mr. Justice Ford, in his charge to the jury in this ease,) when it speaks of “ the person,” having a right to sue, “ did not and could not mean a succession of persons.”
In regard, however, to the first ground of objection to the charge, there is, in my opinion, more to be said.
It is obvious, however, to remark, although no notice was taken of it by counsel on the argument, that so far as respects the right of the plaintiff to recover in this action, there can be no'question ; for if I understand the evidence set forth in the bill of exceptions and the diagram of the premises, which has been exhibited to as, by way of illustration, the defendant has not only diverted the water from the artificial ditch of the plaintiff, but has actually turned it from its natural channel, in which it has always been accustomed to run from and out of the defendant’s land into and upon the land of the plaintiff, so that now it is cut off entirely from the latter, and does not come upon his land at all. As to the plaintiff’s right of action then so far at least as he complains of a diversion from his laud of the natural stream, I see not what question there can be about time. The only matter therefore, that could have been improperly affected by the charge, even if it was wrong, was the question of damages ; for the mere fact, that the plaintiff forty or ten, or five years ago, made an improper use of the water, after it got upon his land, and did not suffer it to return in its natural channel to the defendant’s land, can be no excuse for the act, committed by the defendant in 1833, of diverting the stream from its natural channel, so as to prevent it from running as it had always before run, to and into the plaintiff’s land. This would be to allow the defendant to take the law into his own hands, instead of seeking it, at the hands of the *316 court. If the plaintiff, thirty or forty years ago, made an improper use of the water after it got upon his land, to the injury of the defendant, he ought then to have brought his action for that injury ; or, if it is npt too late, he may bring such action now; but he cannot justify his own wrong, in diverting the stream from its natural course and thereby preventing it from running into thé plaintiff’s land ; nor can he prove the wrong done by the plaintiff in mitigation of damages. Nevertheless, as the plaintiff has Counted in his declaration upon his right to the exclusive use of the water after it got upon his land, by means of the artificial channel he made for it, forty years ago, the charge of the judge upon the question of time became important, as it affected the question of damages. Hence it becomes necessary for us to express our opinions upon that part of the charge, relating to the effect of time upon the rights of the parties.
The statute of limitations makes the lapse of time a positive ■ and legal bar. When once it has begun to run against- a person under no legal disability, it pursues its course uninterrupted by any subsequent events; and when the period prescribed by the statute has elapsed, the bar is complete, and its force can neither be strengthened nor impaired by anything that has happened in the mean time. But when we are called upon to apply the salutary and quieting principles of the statute to cases not within its provisions, we are not to carry the analogy so far as to adopt its specific enactments, and make time itself an absolute bar; instead of a mere presumption, that that has been done, which if proved to have been done, would constitute a bar to the action or the defence.
The analogy to the statute, spoken of in the books, consists only in this: that as the statute has made the lapse of time, in certain cases, a positive bar, which may be pleaded as such, so courts of equity, in cases not within the provisions of the statute,will, after the same lapse of time, raise up a presumption of payment, grant or release which will stand, until overcome by proof of facts, destructive of the grounds of that presumption — or inconsistent with the existence of the grant, payment or release so presumed.
In Campbell v. Wilson, 3 East. 294, it seems to be admitted *317 by all the court, that if the adverse enjoyment of the right of way had been shown to have originated in a mistake, it would have afforded no presumption of a grant. So in Daniel v. North, 11 East. 372, where lights had been put out and enjoyed without interruption for more than twenty years during the occupation of a tenant of the adjoining premises, his landlord, without evidence of his knowledge of the fact, was held not to be concluded thereby; for, say the court, “ the foundation of presuming a grant against any party is, that the exercise of the adverse right, on which such presumption is founded, was against the party capable of making the grant; and that cannot be presumed against him, unless it was probable he knew of what was done against him.” And yet neither mistake on the part of the true owners in the former case, nor want of information as to an adverse enjoyment against him for twenty years, in the latter, would obviate the force of the statute in an action of ejectment.
Again, the cases are very different. The statute leaves nothing for presumption. Time alone settles the rights of the parties, by the giant force of the statute. In this case, the rights of the plaintiff, if supported at all, must be supported on the mere preswaption of a grant. Now an infant can no more be presumed to have made a grant, than the landlord, in the case of Daniel v. North, 3 East. 294, who knew nothing of the adverse enjoyment. The plaintiff then in this case, enjoyed the stream in the manner in which forty years ago he appropriated it to himself, against persons capable of making a grant, only about ten years, viz: against Barnabas Horton, nine years, and Patty Horton the defendant’s wife, about one year. But ten years is not a period sufficient to raise a presumption of a grant; and surely we cannot presume a grant by an infant, or a person under any disability.
In Bailey v. Jackson, 16 Johns R. 210, which was debt for rent reserved on a lease by indenture, and not within the statute, it was held, that as the presumption of payment was not a legal bar, it might be repelled by circumstances. Spencer Justice, who delivered the opinion of the court, referred to Jackson v. Pierce, 10 Johns R. 417, in which it had been held that the twenty years is only a circumstance, on which to found the pre *318 sumption, and is not, in itself, a legal bar, like that created by the statute, which, having once begun to run, will continue, notwithstanding a subsequent disability occurs.
In Dunlop v. Ball, 2 Cranch 180, the plaintiff was under no disability, when the cause of action accrued, but his ability to sue was afterwards interrupted by the war of the revolution ; and Chief Justice Marshall said, “ the principle upon which the presumption of payment arises from lapse of time, is a reasonable presumption, and may be rebutted by any facts which destroy the reason of the rule;” and he added, that “ the court thought it best, to adhere to the old decisions, that twenty years must have elapsed, exclusive of the plaintiff’s disability.”
In Chalkers et al. v. Dickinson, et al, 1 Conn. R. 382, Swift, Chief Justice, said, “as the grant depends on a presumption of law, it is always competent to rebut it, by proof of such circumstances as show no grant could have been made.”
The cases of Campbell v. Smith, 3 Halst. R. 139, 160, and 12 Vesey 265, 14 Mass. R. 49, 1 T. R. 270, and a number of other cases, cited by Chief Justice Ewing in Campbell v. Smith, abundantly show that no less time when that alone is relied upon, than twenty years is sufficient to raise a presumption of a grant, or even of the payment of a bond.
If therefore, we sustain the charge given at the circuit in this respect, we must come to the conclusion, that nine or ten years adverse enjoyment, against a person under no disability, will raise a presumption.of a grant by him; unless we take the broad and arbitrary ground, that twenty years adverse enjoyment of an easement, commencing against a'person not under any disability, will raise such presumption of a grant, though nineteen years of that enjoyment, have been against infants, or insane persons. This would be to apply the statute in all its rigor, to a case not within its provisions, Campbell v. Smith, 3 Halst. 145, and thus, in my opinion, far exceed our judicial authority.
I have no objections to the legislature extending the statute to such cases, and believe it would be for the peace and welfare of society if they did so ; for our laws make ample provisions for guarding the rights of infants and lunatics; and husbands can certainly take care of the rights of their wives; but I do not think *319 the court ought to legislate on the subject further than they hav already gone.
Mr. Angelí, at the conclusion of his treatise on “ adverse en joyment,” pages 116,117, says, “ there is an important distinction between the effect of twenty years possession of land, as it regards infants, &c., and the effect of twenty years enjoyment of an easement; for where the statute of limitations has once begun to operate, its progress will not be restrained by any subsequent disability. But, in cases of presumption from lapse of time, where a subsequent disability of the plaintiff to sue arises, the period of disability, is to be deducted from the twenty years.”
The same author says, in page 34, “ It is well known there is an important distinction between length of time, which operates as a complete bar, and that which is only used by way of evidence. The former is conclusive on the jury — as where the statute of limitations is pleaded in bar to debt, it is conclusive, though the jury are satisfied the debt is still due. But when length of time is used merely by way of evidence, then the jury are at liberty to draw any inference, according to the degree of conviction created in their minds by particular circumstances.”
In short this distinction will be found to run through all the cases. It is clearly pointed out in the case of Darwin v. Upton, 2 Saund. 175 a. And in my opinion the learned judge before whom the cause was tried, erred in putting it to the jury, as a matter of law, and not as a matter of fact for their determination, Campbell v. Wilson 3 East 294; see also Giles v. Barremore, 5 Johns C. R. 545, and Ricard v. Williams, 7 Wheat 111. Upon this ground therefore, I am of opinion the judgment ought to be reversed.
There are other errors assigned upon the form of the record; one of which at least, is of a fatal character. The cause was tried and the verdict rendered in March term 1841, and judgment was thereupon prayed ; but at the instance of the defendant and the court not being advised, &e., day was thereupon given to the first day of July term then next following to hear judgment (fee. At which term, judgment was, in fact given for the plaintiff, and not before: and yet it appears by the same record, that final judgment was signed on the 5th day of April 1841; and it *320 further appears, by a return to a Certiorari to bring up the execution in this ease, that by the execution the sheriff was commanded to make the damages and costs of the lands, &c., whereof the defendant was seized on the said 5th day of April 1841; and upon which execution the plaintiff has also assigned error.
This is so palpably wrong upon the very face of the record, that the judgment and, execution must be reversed and set aside were there no other errors assigned. Indeed the whole record, if such it may be called, it so unskillfully drawn in many other respects, as to render it very doubtful to my mind whether it ought to be sustained, even if it were free from the errors above specified. How far the laxity-in making up records, so loudly and justly complained of by Chief Justice Ewing in McCourry v. Suydam, 5 Halst. R. 249, is to be tolerated, since the legislature has transferred the duty of making up such records, from the attorney to the clerk, I am not prepared to say; but I commend the remarks of the Chief Justice, to which I have alluded, to the attention of the bar.

Judgment reversed.

Cited in Griggs, v. Brake 1 Zab. 173.