# KIRBY *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILROAD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued November 15, 16, 1886.—Decided January 10, 1887.

When relief is asked in equity in courts of the United States on the ground of fraud, time will not run in favor of defendant until discovery of the fraud, or until, with reasonable diligence, it might have been discovered; and this rule is not affected in the State of New York by the provisions of § 382 of the Code of that state as amended in 1877 in so far as they may be construed to modify it.

A statute of a state which provides that "the time which shall have elapsed between the death of any person and the granting of letters testamentary or of administration on his estate, not exceeding six months, and the period of six months after the granting of such letters shall not be deemed any part of the time limited by any law for the commencement of actions by executors or administrators," does not give the party claiming the benefit of its provisions both periods of six months therein mentioned, but only such time, not exceeding six months, as elapsed after

the death of the testator or intestate, before the granting of letters, and the additional time of six months after the granting of letters.

In a state where the statutes authorize ancillary letters to be issued on a will proved in another state, on depositing in the office of the probating court a certified copy of the will and its probate, the executor cannot prevent the statute of limitations of the State from running against him in a court of the United States, sitting in the State, by an unreasonable delay in taking out ancillary letters. -

THIS case was heard in the court below upon demurrers to an amended bill and to an amended bill in the nature of a supplemental bill. The demurrers were sustained and the bill dismissed upon the ground that the suit was barred by the statute of limitations of the State of New York.

The material facts admitted by the demurrer were as follows: The appellant, the plaintiff below, was the executor of John T. Alexander, who died, at his domicil in the State of Illinois, on the 21st of August, 1876. He received his letters testamentary from the proper court in that state on the 6th of September of the same year. On the 7th of April, 1880, ancillary letters were issued to him by the Surrogate of the county of New York, in the State of New York. 2 Rev. Stat. N. Y. (2 ed.), marginal page 67, § 68. (Albany, 1836.)

This suit was brought April 9, 1880. Its object was to obtain a decree setting aside sundry settlements of accounts had by the firm of J. T. & G. D. Alexander & Co. (composed of John T. Alexander, G. D. Alexander, and William Fitch, and to be hereafter called Alexander & Co.) with certain railroad corporations, defendants below, in reference to various business transactions between the parties. Those transactions arose under an agreement, partly written and partly verbal, entered into May 28, 1870, between those corporations and Alexander & Co., relating to the shipment of horned cattle and hogs by the latter over the roads of the former between designated points, and at specified rates of freight. The agreement took effect June 10, 1870, and was to continue in force one year, during which period Alexander & Co. were not to ship horned cattle or hogs over any rival road between the points named. In the event there was a reduction of rates, Alexander & Co. were to have the benefit of the lowest rates between those

points charged by either of the defendant corporations or by any other rival corporation. The agreement contemplated settlements between the parties from time to time and the payment by Alexander & Co., on each shipment, of the rates specified in the agreement. But the amounts so paid, when in excess of the lowest rates charged by the defendant corporations, or either of them, or by other rival corporations, were to be held by the defendants in trust for the shippers and repaid to the latter, by way of "drawbacks," on each occasion when the accounts between the parties were stated and settled.

These settlements were had monthly or oftener. At each of them Vanderbilt, the testator of the individual defendants, in behalf of the railroad corporations, claimed to have peculiar facilities for obtaining information in reference to rates, and promised to keep Alexander & Co. (who had no means of obtaining such information) fully advised in the premises. In reply to specific inquiries addressed to him on the occasion of each of such settlements, he represented that the rates charged by his companies to that firm were not higher than those charged by rival corporations. Relying upon such representations, Alexander & Co. consummated the various settlements upon the basis suggested by Vanderbilt. They, however, subsequently ascertained that the rates charged by the defendant corporations, as well as by rival corporations, to shippers between the points named, and during the same period, were much lower than those charged Alexander & Co., and that the representations to the contrary by the defendant corporations were knowingly false, and made with the intent to cheat and defraud said firm. The bill alleges that the truth, as to what were the current rates for the period covered by the settlements, was fraudulently concealed by the defendant corporations from Alexander & Co., and that said frauds were not, and could not have been, discovered by the latter until on or about April 16, 1873.

The settlements between the parties, it may be stated, covered more than two hundred shipments of cattle and hogs, the freights upon which aggregated nearly $350,000, or about $9000 per week, from June 10, 1870, to March 14, 1871, when

the contract was cancelled by mutual consent.    Immediately thereafter the partnership of Alexander & Co. was dissolved and its affairs adjusted.

G. D. Alexander was adjudged to be a lunatic by the proper court in Illinois on the 3d day of April, 1872, and is still of unsound mind.    A conservator of his estate was shortly thereafter selected, but in reference to that appointment the bill charged that it was a nullity, and that no valid appointment was made until July 3, 1880.    As to Fitch, the remaining partner, he, on April 12, 1879, brought an action in one of the courts of New York for the purpose of enforcing the liability to him, individually, of the defendant corporations and Vanderbilt, on account of the matters in this suit set forth, but, by proceedings had after the commencement of this litigation, his interest in the claim preferred in his own suit was sold, one Taylor becoming the purchaser thereof, and subsequently Fitch's suit was dismissed, by the procurement of the defendants, for want of prosecution.    The plaintiff stated that, at the time of Taylor's purchase, Fitch, by his laches, had lost any individual rights he might theretofore have had in said claim; and that Taylor had not succeeded to any substantial interest capable of being enforced herein.    He also averred that both Fitch and the present conservator of the estate of G. D. Alexander declined, upon request, to unite as coplaintiffs in this suit.

It was further alleged by the plaintiff, that the receipted freight bills having been surrendered to the defendant corporations at the time of the settlements with them, he had no means of ascertaining the amount justly due to said firm, by way of drawbacks, except from the freight bills, checks, and vouchers in the possession or under the control of said corporations.

The prayer of the bill was, that the before-mentioned settlements be opened and set aside, that a reaccounting be had in respect of all of said transactions, and that, upon final hearing, the plaintiff have a decree for the difference between the amount of "drawbacks" repaid to Alexander & Co. at the time of the settlements and the amounts which that firm were

entitled to receive upon each settlement, with interest thereon from the time they were respectively payable.

*Mr. John C. Fay* and *Mr. George Norris* for appellant. *Mr. Joseph E. McDonald* was with them on the brief.

*Mr. John E. Burrill* for appellees.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

The case made by the plaintiff is clearly one of which a court of equity may take cognizance. The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity. It would have been difficult, if not impossible, for a jury to unravel the numerous transactions involved in the settlements between the parties, and reach a satisfactory conclusion as to the amount of drawbacks to which Alexander & Co. were entitled on each settlement. 1 Story Eq. Juris. § 451. Justice could not be done except by employing the methods of investigation peculiar to courts of equity. When to these considerations is added the charge against the defendants of actual concealed fraud, the right of the plaintiff to invoke the jurisdiction of equity cannot well be doubted.

Did the Circuit Court err in adjudging that the suit was barred by the statute of limitations?

By the Code of Civil Procedure of New York in force prior to September 1, 1877, the period of six years was prescribed as the limitation for —

"1. An action upon a contract, obligation, or liability, express or implied," except a judgment or sealed instrument.

*      *      *      *      *      *      *      *      *      *

"6. An action of relief, on the ground of fraud, in cases which heretofore were solely cognizable by the court of chancery; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of

-the facts constituting the fraud." Voorhees' Code, § 91 ; 4th ed. 86 ; 5th ed. 69–70.

The Code which went into operation September 1, 1877, prescribed the like limitation for actions upon contracts, obligations, or liabilities, express or implied, other than judgments or sealed instruments ; but, in place of subdivision 6 of § 91 of the old Code, was substituted the following :

" 5. An action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case which, on the thirty-first day of December, 1846, was cognizable by the court of chancery. The cause of action in such a case is not deemed to have accrued until the discovery, by the plaintiff or the person under whom he claims, of the facts constituting the fraud." N. Y. Code, as amended in 1877, § 382.

The Circuit Court, deeming the jurisdiction in equity and at law to be concurrent in cases like this, was of opinion that the question of limitation is controlled by the local statute, and, upon the authority of *Carr* v. *Thompson*, 87 N. Y. 160, adjudged that this action was not, within the meaning of § 382 of the Code, one " to procure a judgment, other than for a sum of money, on the ground of fraud ;" and that, consequently, the cause of action accrued upon the commission of the alleged frauds (which was in 1871), and not at the date of their discovery, on the 16th of April, 1873. As this view is controverted by the appellant, and is the main ground upon which appellees rely for an affirmance of the judgment below, it must be examined.

It is not clear that the decision in *Carr* v. *Thompson* goes as far as the circuit judge supposed. That was an action against an agent to recover moneys obtained from his principals and converted to his own use, by means of false and fictitious accounts, rendered from time to time, and which he represented to be correct and just. Fraud, although charged, was not regarded by the state court as the basis of the action. It was not deemed a suit to recover damages for the fraud practised, but one merely to recover damages for the violation of the agent's contract or obligation to account justly and honestly to his principals. The sole question, the state court said,

presented by the complaint and answer, was whether the agent
properly performed his duty.    It also was careful to say:
"It is to be observed that the complaint is not framed for
the purpose of opening an account stated; it does not allege
the existence of such an account as an obstacle to a recovery,
which requires the aid of equity to remove; nor, indeed, does
the answer set up any such defence."    These remarks, in con-
nection with the further declaration, that the words "an action
to procure a judgment, other than for a sum of money, on the
ground of fraud," sufficiently describe "a case in which judg-
ment for an accounting is sought in addition to, and as a
means of reaching, a judgment for money," lead us to doubt
whether that court would hold, in a case like the present, that
the time for commencing the action begins to run from the
commission, not from the discovery, of the fraud.

Be · that as it may, it is an established rule of equity, as
administered in the courts of the United States, that, where
relief is asked on the ground of actual fraud, especially if such
fraud has been concealed, time will not run in favor of the
defendant until the discovery of the fraud, or until, with
reasonable diligence, it might have been discovered.   *Meader*
v. *Norton*, 11 Wall. 442, 458; *Prevost* v. *Gratz*, 6 Wheat. 481;
*Michoud* v. *Girod*, 4 How. 503, 561; *Veazie* v. *Williams*, 8
How. 134, 149, 158; *Brown* v. *Buena Vista*, 95 U. S. 157;
*Rosenthal* v. *Walker*, 111 U. S. 185, 190; 2 Story Eq. §
1521*a*; Angell on Limitations.   In *Bailey* v. *Glover*, 21 Wall.
342, 347, it was said, that, "in suits in equity, where relief is
sought on the ground of fraud, the authorities are without
conflict in support of the doctrine that, where the ignorance
of the fraud has been produced by affirmative acts of the
guilty party in concealing the facts from the other, the statute
will not bar relief, provided suit is brought within proper time
after the discovery of the fraud.   We also think that in suits
in equity the decided weight of authority is in favor of the
proposition that, where the party injured by the fraud remains
in ignorance of it without any fault or want of diligence or
care on his part, the bar of the statute does not begin to run
until the fraud is discovered, though there be no special cir-

cumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." In the same case it was said: "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law, which was designed to prevent fraud, the means by which it is made successful and secure." See, also, *Traer* v. *Clews*, 115 U. S. 528, 538. These observations were made with reference to an act of Congress prescribing a fixed time within which a suit between an assignee in bankruptcy and persons asserting adverse rights in property conveyed to such assignee should be brought. They are peculiarly applicable to a local statute, which, if followed, would impair the power of the courts of the United States to enforce the settled principles of equity in suits of which they have, by the Constitution and the laws of the United States, full jurisdiction. While the courts of the Union are required by the statutes creating them to accept, as rules of decision, in trials at common law, the laws of the several states, except where the Constitution, laws, treaties, and statutes of the United States otherwise provide, their jurisdiction in equity cannot be impaired by the local statutes of the different states in which they sit. In *United States* v. *Howland*, 4 Wheat. 108, 115, Chief Justice Marshall, speaking for the court, said, that, as the courts of the Union have a chancery jurisdiction in every state, and the judiciary act confers the same chancery powers on all, and gives the same rule of decision, its jurisdiction must be the same in all the states. The same view was expressed by Mr. Justice Curtis in his work on the jurisdiction of the courts in the United States (p. 13), when he observed that "the equity practice of the courts of the United States is the same everywhere in the United States, and they administer the same system of equity rules and equity jurisdiction throughout the whole of the United States without regard to state laws." So, in *Payne* v. *Hook*, 7 Wall. 425, 430, it was said: "We have repeatedly held that the jurisdiction of the courts of the United States over controversies between citizens of differ-

ent states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of the states, and the practice of their courts, it is not so with equitable. The equity jurisdiction of the courts of the United States is the same that the High Court of Chancery in England possesses, is subject to neither limitation or restraint by state legislation, and is uniform throughout the different states of the Union." See, also, *Robinson* v. *Campbell*, 3 Wheat. 212, 221, 222; *Boyle* v. *Zacharie*, 6 Pet. 632, 648, 658; *Livingston* v. *Story*, 9 Pet. 632, 656; *Stearns* v. *Page*, 7 How. 819; *Russell* v. *Southard*, 12 How. 139, 147; *Neves* v. *Scott*, 13 How. 267, 272; *Barber* v. *Barber*, 21 How. 582, 592; *Green* v. *Creighton*, 23 How. 90, 105. In view of these authorities, it is clear that the statute of New York upon the subject of limitation does not affect the power and duty of the court below — following the settled rules of equity — to adjudge that time did not run in favor of defendants, charged with actual concealed fraud, until after such fraud was or should, with due diligence, have been discovered. Upon any other theory the equity jurisdiction of the courts of the United States could not be exercised according to rules and principles applicable alike in every state. It is undoubtedly true, as announced in adjudged cases, that courts of equity feel themselves bound, in cases of concurrent jurisdiction, by the statutes of limitation that govern courts of law in similar circumstances, and that sometimes they act upon the analogy of the like limitation at law. But these general rules must be taken subject to the qualification that the equity jurisdiction of the courts of the United States cannot be impaired by the laws of the respective states in which they sit. It is an inflexible rule in those courts, when applying the general limitation prescribed in cases like this, to regard the cause of action as having accrued at the time the fraud was or should have been discovered, and thus withhold from the defendant the benefit, in the computation of time, of the period during which he concealed the fraud.

It results that even if this be not an action "to procure a judgment, other than for a sum of money, on the ground of fraud," within the meaning of the New York Code of Procedure, the limitation of six years, being applied here, does not, as adjudged below, commence from the commission of the alleged frauds.

Can the suit be maintained if the cause of action is to be deemed to have accrued from the discovery of the fraud? In *Burke* v. *Smith*, 16 Wall. 390, 401, where the local statute prescribed six years for the commencement of actions for fraud, the court, after observing that equity acts or refuses to act in analogy to the statute, said: "We think a court of equity will not be moved to set aside a fraudulent transaction at the suit of one who has been quiescent during a period longer than that fixed by the statute of limitations, after he had knowledge of the fraud or after he was put upon inquiry with the means of knowledge accessible to him." Without inquiring whether the plaintiff was not guilty of such gross laches, in applying for relief, as deprived him of all right to the aid of equity, and giving him the benefit of the limitation of six years, to be computed from the discovery of the fraud, there seems to be even then no escape from the conclusion that the suit was not brought in time. Seven years, lacking only seven days, elapsed after the discovery of the frauds by the plaintiff's testator before suit was brought.

The plaintiff, however, contends that he had seven years within which to sue. This position is supposed to be justified by the New York statute, which declares that "the time which shall have elapsed between the death of any person and the granting of letters testamentary or of administration on his estate, not exceeding six months, and the period of six months after the granting of such letters, shall not be deemed any part of the time limited by any law for the commencement of actions by executors or administrators." Rev. Stat. N. Y. pt. iii, c. 8, tit. 3, art. 1, § 9, 1st ed. vol. 2, p. 448. [Repealed. See Sess. Laws, 1877, vol. 1, p. 468, c. 417.]

If this statute has any application to a case where the cause of action accrued in the lifetime of the testator or intestate, it

cannot avail the plaintiff. It does not give the party claiming the benefit of its provisions both of the two periods of six months therein mentioned, but only such time, not exceeding six months, as elapsed after the death of the testator or intestate before the granting of letters, and the additional time of six months after the granting of letters. Here only sixteen days intervened between the death and the granting of letters testamentary. In computing the time for suing there must be excluded only these sixteen days and the six months immediately succeeding that period. In other words — applying that statute to the case in hand — the plaintiff had only six years six months and sixteen days, after the discovery on April 16, 1873, of the alleged frauds, within which to sue; whereas, this action was not brought until seven years, lacking only seven days, after the alleged frauds were discovered.

We do not conceive that the time of granting the ancillary letters testamentary in New York can affect the question. The will having been proved in Illinois, the place of domicil, there was nothing to prevent the immediate issue of letters upon it in New York. By the laws of that state, no further probate was necessary; a certified copy deposited in the office of the surrogate was all that was required. As this was in the executor's power to have done at any time, he can hardly claim that his own voluntary delay should extend the period which equity considers reasonable for the institution of a suit. 2 N. Y. Rev. Stat. (2d ed.), marg. paging 67, § 82; Civil Code, § 2695.

*The decree is affirmed.*