## AIRCRAFT & DIESEL EQUIPMENT CORPORATION v. HIRSCH et al.

### Civil Action No. 28999.

District Court of the United States for the District of Columbia.

Sept. 28, 1945.

Gallagher, Rinaker, Wilkinson & Hall, of Chicago, Ill., and Hill & Crenshaw, of Washington, D. C., for plaintiff.

Rawlings Ragland, Acting Asst. Atty. Gen., Edward M. Curran, U. S. Atty., of Washington, D. C., Arnold Levy, Sp. Asst. to Atty. Gen., and Walker Lowry and A. Morris Kobrick, Attys., Dept. of Justice, both of Washington, D. C., for defendant.

Before MILLER, Associate Justice, United States Court of Appeals, District of Columbia, and BAILEY and PROC-TOR, Associate Justices, District Court of the United States for the District of Columbia, sitting as a statutory three-judge court.

BAILEY, Associate Justice.

The plaintiff is a corporation under the laws of the State of Delaware. The defendant Henry L. Stimson was the Secretary of War and the defendant Robert P. Patterson was the Under Secretary of War at the time of the filing of the amended complaint. The remaining defendants are the members of The War Contracts Price Adjustment Board.

This is a suit filed by the plaintiff, seeking a declaratory judgment to the effect that the original Renegotiation Act passed by Congress on April 28, 1942 and the later Act which became effective on February 25, 1944, being Title VII of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Acts, which amended and reenacted the Act of April 28, 1942, is each unconstitutional as repugnant to Articles I and II and Amendments V, VII and X of the Constitution of the United States.

The plaintiff has filed an amended and supplemental complaint in which it also seeks injunctive relief restraining the defendants from further proceeding under the Renegotiation Act and particularly under Sections 403(c)(2) and 403(e)(1) in so far as said Act, 50 U.S.C.A.Appendix § 1191(c)(2), (e)(1), and said sections provide for the taking of plaintiff's "property" without any form of judicial review, and, in addition, injunctive relief restraining the defendants from taking plaintiff's "property" prior to a redetermination by The Tax Court of the United States of the determination of the War Contracts Price Adjustment Board, for the reason that said order was entered by the Board illegally, arbitrarily, capriciously and without regard to the evidence then before it, finally that the enforcement of said order of January 11, 1945 will cause plaintiff irreparable injury, and this latter relief is sought also under the general equity powers of the Court.

The amended complaint states that the plaintiff made a contract with the United States Navy on May 21, 1941, under which it agreed to furnish certain pumps to the United States Navy; that on March 17, 1942 it entered into an agreement supplemental to contract of May 21, 1941, by which plaintiff agreed to furnish certain pumps and other material to the United States Navy, and that during the fiscal year ended November 30, 1943, it furnished to the Navy Department pumps and other material as had not been previously furnished on the supplemental contract of

March 17, 1942, and that all the equipment delivered by the plaintiff to the United States Navy in the fiscal year ended November 30, 1943, were all paid for by the United States on or before the 27th day of August 1943; that after certain proceedings and conferences the War Contracts Price Adjustment Board notified plaintiff that it had received excessive profits of $1,265,000 in the fiscal year ended November 30, 1943 and that on or about January 11, 1945 plaintiff was notified of the entrance and issuance of an order by the defendant, Robert P. Patterson, Under Secretary of War, acting as a delegate of the War Contracts Price Adjustment Board that plaintiff had realized the said excessive profits in the said fiscal year and plaintiff was directed to pay that sum, less applicable taxes previously paid, to the Treasury of the United States; that on February 28, 1945, plaintiff requested the said Board to initiate a review of the above determination but that on May 3, 1945, the Board refused to do so; that under the provisions of Section 403(c)(2) of the Renegotiation Act the Board may direct the defendant Henry L. Stimson, Secretary of War, to direct contractors or sub-contractors for whom the plaintiff had done work under contract or pursuant to sales orders, to withhold such sums of money due the plaintiff as will aggregate $1,265,000 less applicable tax adjustment; that on April 4, 1945 plaintiff, pursuant to right granted by Section 403(e)(1) of the Renegotiation Act, petitioned the Tax Court of the United States to redetermine the excessive profits, if any, realized during the fiscal year ended November 30, 1943; that the United States filed a motion to strike this petition on the ground that it was filed prematurely; that this motion was heard on May 16, 1945, but that in the event The Tax Court shall dismiss said petition, the plaintiff will file another petition in The Tax Court for the same purpose; that "notwithstanding the fact that the plaintiff has filed its petition for redetermination in The Tax Court of the United States whereby it seeks an orderly determination of the amount, if any, it may owe to the United States of America, as excessive profits for its fiscal year ending November 30, 1943," the War Contracts Price Adjustment Board purposes to direct the Secretary of War to withhold moneys due to the plaintiff by said contracts for the account of the United States in the amounts determined by it to be due as excessive

profits and the Secretary of War purposes to follow such directions; that in the event of such seizure of such amounts due to the plaintiff or the payment thereof by customers thereof to the Treasury, the amounts so seized or paid would be transferred to the Surplus Fund of the United States Treasury; that the Renegotiation Act in so far as it may authorize such seizure is in violation of rights guaranteed to the plaintiff by the Constitution of the United States; that there was, as of May 1, 1945, due plaintiff from its customers (they being firms, individuals and corporations, other than the United States of America, or any department, agency or instrumentality thereof) approximately $274,000, and on that date plaintiff had on its books unfilled orders from such customers and others (not the United States of America or any department, agency or instrumentality thereof), calling for the manufacture and sale of its products at prices approximately aggregating $890,000. The said sums now due, or such portion thereof as the War Contracts Price Adjustment Board has determined should be withheld and paid into the Treasury, and other sums which may become due in the future, Henry L. Stimson or his delegates will, as his delegate Robert P. Patterson did in a prior year, direct to be withheld from the plaintiff and paid into the Treasury of the United States. Plaintiff avers that, after adjustment for Federal income and excess profits taxes, the amount involved in the order and decision of War Contracts Price Adjustment Board does not and can not exceed $275,000, but defendant Henry L. Stimson, acting at the threatened direction of the War Contracts Price Adjustment Board nevertheless threatens to, and will, unless enjoined and restrained, order the withholding from the plaintiff and the payment by plaintiff's customers of said sums of money into the Treasury of the United States; that the action of the War Contracts Price Adjustment Board was arbitrary; it refused to state the ground upon which it acted and this was in violation of the provisions of the Constitution in that it acted without due process of law.

The amended complaint further sets out certain transactions which it claims were contracts entered into before the passage of the original Renegotiation Act under which various articles were sold, some of which were sold and delivered after the passage of that Act and some before, and that the action of the defendants in mak-

ing any redetermination of all profits arising under these contracts was unconstitutional and void; that as to contracts entered into after the passage of the Renegotiation Act, in so far as they might be controlled by the Act, the Act was so indefinite and uncertain and was unconstitutional in investing administrative bodies with the legislative powers without sufficiently defining the terms and conditions under which these powers were to be exercised.

The amended complaint seeks an injunction enjoining the defendants from eliminating any excessive profits of the plaintiff determined by the War Contracts Price Adjustment Board by directing any customers of the plaintiff to withhold for the account of the United States, or otherwise, any moneys due to the plaintiff or directing any such customers to pay any money due to the plaintiff into the Treasury of the United States.

■ The preliminary question to be determined is the jurisdiction of equity. In the first place the plaintiff has filed its petition in The Tax Court of the United States, seeking a determination of the amount of excess profits, if any, which it has earned if the Renegotiation Act be constitutional. It is enough to say that if The Tax Court of the United States should hold that the plaintiff received no excess profits, then the constitutionality of the Act of Congress is immaterial so far as the rights of the plaintiff are concerned and for that reason the suit is premature.

■ In addition to this, equity has no jurisdiction for the reason that the plaintiff has complete remedies by actions at law. It claims that certain parties are indebted to it by reason of certain contracts; the payment of these claims under a judgment at law would give a full, adequate and complete remedy. These debtors are not numerous, and so far as the plaintiff's being entitled to relief to avoid a multiplicity of suits, it has a complete remedy in the Court of Claims for all sums of which it may be deprived, if the Renegotiation Act be unconstitutional.

In the case of Coffman v. Breeze Corporations, Inc., et al., 323 U.S. 316, 65 S.Ct. 298, 301, which was a suit by a patent owner against his licensees, seeking an adjudication of unconstitutionality of the Royalty Adjustment Act and seeking an injunction against the licensees from complying with the Act by paying the balance in excess of royalty payments and in excess of the amount declared by the War and Navy Departments to be fair and just into the Treasury of the United States, the Court held that equity was without jurisdiction. The Act in question in that case deprived the licensor of any remedy. The Court said:

"The only rights asserted as the basis for the relief sought by appellant are derived from the license agreements. Those agreements, so far as now appears and as we assume for present purposes, are contractual obligations to pay the stipulated royalties. As they accrue, the royalties become simple debts recoverable in an action at law, or possibly, where the accounts are complicated, in a proceeding for an accounting such as appellant has already begun in its separate suit pending in the District Court of New Jersey. Kirby v. Lake Shore & M. S. R. Co., 120 U.S. 130, 7 S. Ct. 430, 30 L.Ed. 569; United States v. Old Settlers, 148 U.S. 427, 465, 13 S.Ct. 650, 655, 37 L.Ed. 509.

"Appellant does not in the present suit bring to our attention any facts showing or tending to show that a suit to recover a money judgment for the royalties would not afford complete and adequate relief without resort to an equitable remedy. In such a suit if appellee Breeze is obligated by the contracts in question to pay the royalties to appellant, it can discharge that obligation only by payment of the amount due, or by setting up the Royalty Adjustment Act as a defense. Compliance with the duty under the Act to pay into the Treasury the royalties withheld from appellant would operate by the terms of the Act as a discharge of the obligation to pay appellant. If that defense were offered, the constitutional validity of these provisions of the Act would be a justiciable issue in the case, since upon its adjudication would depend appellant's right to recovery.

"But whether the provisions of the Act be valid or invalid appellant shows no ground for equitable relief. If valid they would be a defense, and appellant would be entitled to no relief other than that afforded by the suit against the Government authorized by § 2 of the Act. If invalid, appellant's right to recover remains unimpaired. The sufficiency of the defense may be as readily tested in a suit at law to re-

cover the royalties as by the present suit in equity to enjoin payment of the royalties into the Treasury. In either case appellant would receive all the relief to which it shows itself entitled."

The Act of Congress involved in the Coffman case is very similar to the Act in this case and there is no reason why the plaintiff has not a complete and adequate remedy by suit against its customers for any sums that may be due from them, if the Act be unconstitutional; and, as to any liability on the part of the United States, its remedy is in the Court of Claims.

The plaintiff contends that the Coffman case was decided simply upon the ground that the complaint did not allege that the plaintiff in that case would be irreparably injured. It is not sufficient, however, to allege irreparable injury without showing the facts upon which that injury follows. In this case, mere delay in the collection of sums due to the plaintiff, the complaint not stating that the debtors are or are likely to become insolvent, does not constitute irreparable injury.

So far as the administrative procedure is concerned, any defects in the hearing before the War Contracts Price Adjustment Board are immaterial so long as the plaintiff obtains a full hearing before The Tax Court of the United States. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

In the case of Arrow Distilleries, Inc., v. Alexander, D.C., 24 F.Supp. 880, which was affirmed by the Supreme Court of the United States in 306 U.S. 615, 59 S.Ct. 489, 83 L.Ed. 1023, it was held that one is not entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted, even though the question of the constitutionality of the statute prescribing the administrative remedy is undecided.

We conclude, therefore, that the suit is premature and, in addition, that equity has no jurisdiction.

The motions of the defendants to dismiss the amended complaint and for a summary judgment will each be sustained without prejudice, however, to the right of the plaintiff to maintain actions at law against its debtors and to bring suit as it may be advised in the Court of Claims.