EMILY V. KYLE, PLAINTIFF-APPELLANT, v. GREEN ACRES AT VERONA, INC., A CORPORATION, DEFENDANT-RE-SPONDENT.

Argued November 4, 1964—Decided February 23, 1965.

*Mr. David W. Conrad* argued the cause for appellant.

*Mr. Robert J. C. McCoid,* of counsel, argued the cause for respondent (*Messrs. Schneider & Morgan,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. Plaintiff instituted suit on May 28, 1962, in the Superior Court, Law Division, for personal injuries sustained when she fell on the sidewalk of defendant's premises on January 21, 1957. Her complaint alleged that her mental disability tolled the statute of limitations, *N. J. S.* 2A :14–21. Defendant asserted the statute of limitations as an affirmative defense (*i. e.*, the complaint had not been filed within two years from the date of the alleged accident). It took plaintiff's depositions, and thereafter moved for summary judgment basing its argument on the statute and depositions. The trial court, finding that no genuine issue as to any material fact existed (*R. R.* 4 :58–3), and that the complaint had not been filed within the prescribed period of limitation, granted defendant's motion. Plaintiff appealed and we certified the matter before argument in the Appellate Division.

When plaintiff fell on defendant's icy sidewalk, she sustained a fractured hip. She was taken to Mountainside Hospital, given medication and had her hip pinned on January 23, 1957. She was released from the hospital on February 14, 1957, stayed in a nursing home for approximately one month, lived at home with nursing care for several days and then on March 14, 1957 procured her own admission to New York Hospital for an operation for the treatment of the hip and for the treatment of a nervous disorder. In this hospital the psychiatric treatment included medication and shock therapy. She was released on July 31, 1957, returned home where she stayed until August 27, 1957, when she was voluntarily admitted to the Essex County Overbrook Hospital, a hospital for mental patients.

On October 13, 1957, she was officially committed as "insane." She was released to a nursing home in April 1961 and was officially discharged from Overbrook in March 1962. As noted above, her complaint was filed May 28, 1962.

In her depositions she stated that right after the accident she realized that her nervous system was affected, *i. e.*:

"A. Well, after the operation I realized, and now, I cannot tell you whether it was the day after or two days after or how many days after, but I knew that in addition to having the broken hip that my nervous system was affected because I couldn't read.

Q. Now, how soon after the accident did you begin to feel that your nerves were affected? A. That's what I say. I can't tell you whether it was the next day or two days but it was very very soon, very soon."

Besides the inability to read, she stated that she lost her sense of hunger, that her tear glands, her salivary glands, and the glands which provide moisture for the nose and wax for the ears were inoperative, and that there were other effects. She also referred to a prior "nervous" ailment in about 1942 which required hydrotherapy and medication treatments at a New York hospital for approximately one year. However, she stated that she was, at the time of the accident, and had been for seven years in "radiant health."

Historically, the laws limiting actions were the creation of statute. In the case of torts at common law, the maxim, *actio personalis moritur cum persona,* applied, and the action was there limited by the duration of the life of either party. The fiction of presumption of payment after a period of time operated as a check on stale demands. Although the Parliament did not at first fix any certain period within which actions should be started, when the abuses from stale demands became unendurable, it passed from time to time and at certain notable times various statutes barring suits and actions, the causes of which arose previous to their respective dates, *i. e.,* the beginning of the reign of King Henry the First, the return of King John from Ireland, the journey of Henry the Third into Normandy, and the coronation of King Richard the First. The early statutes applied to realty alone, and, though productive of immediate relief, the advantage was only temporary.

In the reign of Henry the Eighth a comprehensive course was taken by the statute of 32 *Henry* VIII, *c.* 2, (1540) so that, in the language of Lord Coke, 2 *Inst.* 95, "by one constant law certain limitations might serve both for the time present and for all times to come." The limitation of time, in every case, was reduced to a fixed interval between the accrual of the right and the commencement of the action. It contained a saving clause for disabilities but the statute as a whole did not deal with personal actions and made no reference to insanity. I *Wood, Limitations of Actions* (*4th ed.* 1916), *sec.* 2, *pp.* 5–7; 34 *Am. Jur. Limitations of Actions, sec.* 2, *p.* 14.

The statute here particularly relevant is 21 *James* 1, *c.* 16 (1623) which dealt with specific limitations of actions and made the first reference to insanity *i. e., non compos mentis,* as a disability which would toll the running of the statute. Section 7 provided:

"Provided nevertheless, and it be further enacted, That if any person or persons that is or shall be entitled to such action of trespass, detinue, action sur trover, replevin, actions of accounts, actions of

debts, actions of trespass for assault, menace, battery, wounding or imprisonment, actions upon the case for words, be or shall be at the time of any such cause of action given or accrued, fallen or come, within the age of twenty-one years, *femme covert, non compos mentis*, imprisoned or beyond the seas, that then such person or persons shall be at liberty to bring the same actions, so as they take the same within such *times as are* before limited, after their coming to or being of full age, discovert, or sane memory, at large, and returned from beyond the seas, as other persons having no such impediment should have done."

This statute was in effect in New Jersey until 1799.[1] From that point the New Jersey statutes were controlling. An act for the limitation of actions was passed by the council and general assembly of New Jersey in 1799, providing for limitation of actions in several fields. *Paterson's Laws*, 352.[2] The one here relevant (personal actions) had a saving clause al-

---

[1] The *New Jersey Constitution of* 1776 provided:

"XXI. That all the laws of this province, contained in the addition lately published by Mr. Allinson, shall be and remain in full force until altered by the legislature of this colony (such only excepted as are incompatible with this charter), and shall be, according as heretofore, regarded in all respects by all civil officers, and others, the good people of this province.

XXII. That the common law of England, as well as so much of the statute law, as have been heretofore practised in this colony, shall still remain in force, until they shall be altered by a future law of the legislature; such parts only excepted, as are repugnant to the rights and privileges contained in this charter; * * *."

[2] This act by sec. 16 repealed "An Act for the limitation of actions and for avoiding suits in law" which act had been enacted in 1727 providing (Allinson's, *Laws of New Jersey*, (1727–1728, *p.* 28)):

"For Quieting Mens Estates, and avoiding of suits, Be it Enacted by the Governour, Council and General Assembly of this Province, and it is hereby Enacted by the Authority of the same, That all the Statutes now in Force in that Part of *Great Britain* called *England*, concerning the Limitation of Actions real and personal, shall and are hereby declared to be in Force in this Province, from the Publication hereof, as fully and effectually as if every of them were herein at length repeated and Enacted, any Law, Usage, or Custom to the contrary in any wise notwithstanding."

There was, however, a statute passed in 1787 in New Jersey, relating solely to real estate which did not contain a disability saving clause. *Paterson's Laws, p.* 81.

most identical to that of 21 *James* 1, *c.* 16, Section 4, which stated [21 *James* 1, *c.* 16 is within brackets] :

"Provided always, and be it further enacted, That if any person or persons, who [that] is, are, or shall be entitled to any of the actions specified in the three preceding sections of this act, [such action of * * *] is, [be] are, or shall be, at the time of any such cause of action accruing, [given or accrued, fallen or come] within the age of twenty-one years, feme covert, or insane, [*non compos mentis*, imprisoned or beyond the seas,] that then such person or persons shall be at liberty to bring the said action [same actions] so as he, she or they institute or take the same within such time [times] as is [are] before limited, after his, her or their coming to or being of full age, discovert, or of sane memory, [at large, and returned from beyond the seas,] as by other person or persons, having no such impediment, might [should] be done."

The act was supplemented on February 21, 1820 with a provision tolling the statute if the defendant was a nonresident. *Laws of New Jersey* (1820), *p.* 46. In 1841 it was again supplemented, tolling the statute for six months when the defendant died. *Laws of New Jersey* (1841), *p.* 48; *Harrison, Public Laws of New Jersey* (1843), *p.* 428. There was a revision of 1845, *Statutes of New Jersey* (1847), *p.* 92, which did not essentially change the 1799 act but consolidated the original and all the supplements. By *Rev.* 1877, *p.* 594, 3 *Compiled Statutes of New Jersey* (1709–1910), *pp.* 3164–5 the Legislature revised the disability section by deleting any reference to *feme covert* as a disability which would toll the statute.

The statute was again revised in 1937, *R. S.* 2 :24–4. In its present form it (*N. J. S.* 2A :14–21), states [the 1877 statute is in brackets] :

"If any person entitled to any of the actions or proceedings specified in Sections 2A :14–1 to 2A :14–8 or Sections 2A :14–16 to 2A :14–20 of this title or to a right or title of entry under Section 2A :14–6 of this title [That if any person or persons who is, are or shall be entitled to any * * *] is or shall be, at the time of any such cause of action or right or title accruing, under [within] the age of 21 years, or insane, such person [that then] may commence such action [shall be at liberty to bring said] or make such entry, within such time as limited by said sections, after his coming to or being of full age or of

sane mind[3] [so as he, she or they institute or take the same within such time as is before limited after his, her or their coming to or being of full age, or of sane memory, as by other person or persons having no such impediment might be done]."

It appears settled that in England where the statutory time has begun to run no subsequent disability, however involuntary, will suspend its operation. *Doe d. Griggs and Another v. Shane, M.* 28 *Geo.* 3, *B. R.* [1787]. *Cf. Homfray v. Scroope and Others,* 13 *Q. B.* 509; 116 *Eng. Rep.* 1357 (1849).

In *DeKay v. Darrah,* 14 *N. J. L.* 288, 293 *(Sup. Ct.* 1834), the court pointed out that our statute of limitations in regard to personal actions, is identical with 21 *James* 1, *c.* 16 and the general rules of construction in the English courts, in respect to personal actions, were fully adopted and uniformly acted on in this State. See also *Smith v. Felter,* 61 *N. J. L.* 102, 105 *(Sup. Ct.* 1897) ; *Thorpe v. Corwin,* 20 *N. J. L.* 311, 314 *(Sup. Ct.* 1844) ; *Valente v. Boggiano,* 107 *N. J. L.* 456, 460 *(E. & A.* 1930).

From our historical analysis we conclude that *N. J. S.* 2A:14–21 forecloses a tolling of the running of this statute of limitations unless plaintiff was within the prescribed cate-

---

[3] We note that *R. S.* 2:24–4 (the disability section of the 1937 revision) referred only to sections *R. S.* 2:24–1 [six years; certain enumerated actions, *i. e.,* all actions in the nature of trespass *quare clausum fregit,* trespass, detinue, trover, actions of replevin for the taking away of goods and chattels, actions in the nature of debt, founded upon a lending or contract without a specialty or for arrears of rent due on a parol demise, actions of account, actions in the nature of actions upon the case, now referred to in *N. J. S.* 2A:14–21] ; *R. S.* 2:24–2 [two years; action for injuries to person by wrongful act; now referred to in *N. J. S.* 2A:14–21] ; *R. S.* 2:24–3 [one year; libel or slander, now referred to in *N. J. S.* 2A:14–21].

The other section of the 1937 revision which limited actions pertained, in part, to real estate and contained separate disability savings clauses. All of those sections are apparently now referred to in *N. J. S.* 2A:14–21 and are covered by the disability clause therein. We also note without comment that the phraseology of the disability clause contained in each of these sections has been changed upon incorporation into *N. J. S.* 2A:14–21.

In addition, the 1952 revision changed the word "memory" of the 1937 act to "mind."

gories at the time the cause of action accrued and that no "time out" for the period of time covered by the disability is possible if the disability occurred after the cause of action accrued.

However, plaintiff contends that where defendant's negligence itself caused insanity the running of the statute of limitations should be suspended until sanity is restored. In *Nebola v. Minnesota Iron Co.*, 102 *Minn.* 89, 112 *N. W.* 880 (1907), the Supreme Court of Minnesota adopted the rule which has been followed by a limited number of jurisdictions that when the injury and the resulting insanity occur on the same day, the two events will be considered legally simultaneous and the statute will not begin to run until sanity is restored. That view is based on the theory that the courts will not take notice of a fraction of a day. See *Pannell v. Glidewell*, 146 *Miss.* 565, 111 *So.* 571 (*Sup. Ct. Miss.* 1927); *Taylor v. Houston*, 93 *U. S. App. D. C.* 391, 211 *F. 2d* 427, 41 *A. L. R. 2d* 724 (*D. C. Cir.* 1954); *Weinstock v. Eissler*, 224 *Cal. App. 2d* 212, 36 *Cal. Rptr.* 537, 550 (*D. Ct. App.* 1964). In *Weinstock*, the complaint alleged instant and immediate insanity and therefore was held to state a cause of action. In *Taylor*, the complaint alleged an assault and battery on a certain day and that plaintiff became *non compos mentis* twelve days thereafter for six months, implying that the mental condition resulted from the accident. The court held that the statute barred the cause of action. It tempered the holding by adding (211 *F. 2d*, at *p.* 428):

"Of course, where the disability arises a very short time after the injury and persists throughout the entire limitation period, strong equitable considerations might militate against application of this rule."

But see contrary to *Nebola*, *Roelefsen v. Pella*, 121 *Iowa* 153, 96 *N. W.* 738 (*Sup. Ct.* 1903), where the insanity developed on the same day three or four hours after the accident.

On the present record, plaintiff could not be found to have become insane on the day of the accident. Hence, *Nebola*

would not apply and if plaintiff seeks an extension of *Nebola*, we cannot so construe the statute of limitations.

Plaintiff also contends that we should apply the equitable doctrine that no man shall benefit from his wrong, *Lamb v. Martin*, 43 *N. J. Eq.* 34, 37 (*Ch.* 1887), and *Russell v. Hanan*, 119 *N. J. Eq.* 99, 100 (*Ch.* 1935), if defendant's negligent act caused plaintiff's insanity and thus prevented plaintiff from suing within time.

We must keep in mind the basic purposes of the statute of limitations. As noted in *Wood v. Carpenter*, 101 *U. S.* 135, 139, 25 *L. Ed.* 807, 808 (1879), statutes of limitations embody important public policy considerations in that "they stimulate activity and punish negligence" and "promote repose by giving security and stability to human affairs."

In I *Wood on Limitations of Actions, supra, sec. 4, pages* 8–9 we note:

"The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation be presumed to have been paid, and is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof * * *. The underlying purpose of statutes of limitations is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution."

In *Hughes v. Roosevelt*, 107 *F.* 2d 901, 903 (2 *Cir.* 1939), Judge Clark stated that:

"[It] is an interesting question whether insanity arising from a defendant's act which is the cause of action sued upon prevents the statute from running within the meaning of the exception."

He suggested that:

"[Even] if insanity did not result at once, [plaintiff] may still be able to furnish proof excusing his apparent laches. Insanity of such a nature as to show lack of sufficient knowledge to bring suit during the period of the running of the statute may well provide such an excuse, even if it does not technically toll the * * * statute."

As pointed out by Mr. Justice Jacobs in *Fernandi v. Strully*, 35 *N. J.* 434, 439 (1961):

"Most courts, including those in New Jersey, have taken the position that where a plaintiff suffers damage as the result of the defendant's wrong he may be barred though he does not, during the customary period of limitations, know or have any reason to believe that he has a cause of action. * * * In reaching this result the courts have evidently considered that the obvious injustice to the plaintiff is outweighed by broader policy considerations favoring the defendant; * * * ."

But that:

"Notwithstanding the foregoing, there have been many instances in which courts, in our State as well as elsewhere, have found the particular circumstances and the considerations of individual justice to be sufficiently compelling to dictate a less harsh approach."

We there found such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice.

In I *Wood on Limitations of Actions, supra,* we note (at *pp.* 1364–5) that in equity where there is concealment of a fraud, the statute does not start to run until plaintiff discovers the fraud. "The reason why, if fraud has been concealed by [defendant], and until it has been discovered by [plaintiff], the statute should not operate as a bar, is, that it ought not in conscience to run; the conscience of the [defendant] being so affected that he ought not to be allowed to avail himself of the [statute] * * * ." See *Kirby v. Lake Shore etc. R. R. Co.*, 120 *U. S.* 130, 7 *S. Ct.* 430, 30 *L. Ed.* 569 (1887); *Lincoln v. Judd*, 49 *N. J. Eq.* 387 (*Ch.* 1892); *Partrick v. Groves*, 115 *N. J. Eq.* 208 (*E. & A.* 1934).

Although in these cases the act of defendant involved one of moral turpitude resulting in debarring or deterring plaintiff from instituting suit, authorities exist in cases not necessarily involving moral turpitude. In *Noel v. Teffeau*, 116 *N. J. Eq.* 446 (*Ch.* 1934), defendant, a hit-and-run driver, injured plaintiff. Not until the statute of limitations had expired, did plaintiff learn of defendant's identity although

defendant had informed the police of his possible involvement. Investigators of defendant's insurance company visited plaintiff at the hospital immediately after the accident but did not tell plaintiff whom they represented or the name of defendant. When plaintiff eventually brought suit, the defense of limitations was raised. He turned to equity and secured an injunction. In granting relief, the vice-chancellor noted that defendant had failed to comply with the Motor Vehicle Laws which required him to give his name and address to the injured party. The purpose of the requirement was said to be to inform the injured of persons to whom he might turn for possible redress. Plaintiff's inaction was due to lack of knowledge; defendant failed a legal duty to supply the necessary information. The vice-chancellor thought it unconscionable to allow defendant to urge the bar of limitations.

In *Howard v. West Jersey & S. R. Co.*, 102 *N. J. Eq.* 517, 520–1 (*Ch.* 1928), affirmed on opinion below 104 *N. J. Eq.* 201 (*E. & A.* 1929), defendant's agents led plaintiff reasonably to believe that no question would be raised concerning defendant's responsibility for the accident causing plaintiff's injuries, that the amount to be paid to plaintiff could be best determined by awaiting plaintiff's full recovery and that plaintiff need not employ an attorney. Plaintiff relying on these suggestions delayed bringing his suit. Defendant then asserted the defense of the statute of limitations. Chancery enjoined this defense stating:

"It seems clear that if defendants' wrongful conduct can be said to have caused complainants to subject their claim to the bar of the statute of limitations, a court of equity should not permit them to hold the advantage thus obtained.

It must be recognized that the statute of limitations is for the benefit of individuals, and not to secure general objects of policy; hence, it may be waived by express contract or by necessary implication, or its benefits may be lost by conduct invoking the established principles of *estoppel in pais*. * * * Also, it should be noted that while the doctrine of *estoppel in pais* rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty

of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

The important factor in these categories is that plaintiff did not exercise his right to sue and was led not to do so by defendant's act or failure to perform an act resulting in the running of the statutory period of limitations. These cases are unlike the ordinary negligence case not involving mental incapacity resulting from the accident where defendant does nothing to affect plaintiff's exercise of his will.

But in the present case in terms of equally appealing equitable considerations, if plaintiff's insanity was caused by defendant's wrongful act, it may be said that such act was responsible for plaintiff's failure or inability to institute her action prior to the running of the statute of limitations. We feel that justice here requires us to carve out an equitable exception to the general principle that there is no time out for the period of time covered by the disability if the disability accrued at or after the cause of action accrued. Thus, a defendant whose negligent act brings about plaintiff's insanity should not be permitted to cloak himself with the protective garb of the statute of limitations.[4]

---

[4] Compare authorities in a somewhat related field, *i. e.*, notice of claims preliminary to filing suit against a public body. In *Randolph v. City of Springfield*, 302 *Mo.* 33, 257 *S. W.* 449, 450, 31 *A. L. R.* 612 (*Sup. Ct.* 1923), plaintiff, by defendant's negligence, was rendered unable to give a notice of claim to defendant within the statutory period; the court gave plaintiff the right to give such notice within a reasonable period after incapacity terminated. See also *City of Tulsa v. Wells*, 79 *Okl.* 39, 191 *P.* 186 (1920) ; Annotation 41 *A. L. R.* 2d 726 (1955) and 31 *A. L. R.* 619, 622 (1924).

Moreover, we cannot conceive of any Legislature, confronted with the set of facts here alleged, condoning an interpretation of its statute of limitations which would protect any defendant whose negligence caused plaintiff's insanity resulting in the bar of the statute.

However, this broad principle should also require equity to give some protection to a defendant from stale claim litigation. Plaintiff should act promptly. Even in fraud cases, the authorities require a plaintiff to be diligent because a plaintiff cannot defer the running of the statute by sleeping on his rights or by his own negligence. *Cf.* II *Wood, supra, sec.* 276 *c*(2), *pp.* 1412 *et seq.*

The equitable approach should mandate the following: A trial court shall itself without a jury hear and determine (1) whether insanity developed on or subsequent to the date of the alleged act of defendant and within the period of limitation and if so, whether that insanity resulted from the defendant's acts; and (2) whether plaintiff's suit was started within a reasonable time after restoration of sanity or after the appointment of a guardian or committee who knew or should have known of the cause of action. If the trial court finds for plaintiff, the statute of limitations shall be barred as a defense.

■ Finally, for the guidance of the trial court we define "insane" within the meaning of the statutory provision. In *Drachenberg v. Drachenberg*, 4 *N. J. Super.* 510, 514 (*App. Div.* 1949), the court stated that sanity rather than insanity is presumed and in *Brinson v. Hernandez*, 24 *N. J.* 391, 393 (1957), Mr. Justice Weintraub points out that under the circumstances of each case it may be inferred that the sanity continues.

In *Clarke v. Irwin*, 63 *Neb.* 539, 88 *N. W.* 783, 785 (*Sup. Ct.* 1902), the court pointed out that the issue of insanity most frequently occurs in judicial proceedings as follows: first, in direct proceedings to procure the commitment of persons alleged to be insane; second, in suits affecting the validity of wills, where it is sought to show that the testator was not of disposing capacity; third, in criminal proceedings, where the defense pleaded is insanity and irresponsibility; fourth, in suits to avoid contracts because of insanity; and, fifth, in proceedings otherwise barred, where the plea is that

he against whom the statute of limitations is pleaded comes within the enumerated exceptions because of insanity. Mr. Chief Justice Weintraub noted in *Aponte v. State*, 30 *N. J.* 441, 450 (1959), that "insanity" has many meanings, for, one may be insane for one purpose and sane for another.

The following definitions are suggested by other courts: payee of note who was mentally incompetent to transact his business affairs was "insane" for purpose of tolling statute of limitations, *Browne v. Smith*, 119 *Colo.* 469, 205 *P. 2d* 239, 241 (*Sup. Ct.* 1949), 9 *A. L. R. 2d* 911 (1950); unable to understand simple subjects or to transact any business, *Mullins v. Barrett*, 204 *Ga.* 11, 48 *S. E. 2d* 842 (*Sup. Ct.* 1948); such as would prevent the person from understanding the nature of his act, *Barnett v. Ashley*, 89 *Ga. App.* 679, 81 *S. E. 2d* 11, 13 (*Ct. App.* 1954); incapable of caring for property, transacting business, or understanding the nature or effects of his acts, *Gottesman v. Simon*, 169 *Cal. App. 2d* 494, 337 *P. 2d* 906 (*D. Ct. App.* 1959); unable to understand the nature and effect of the act in which he is engaged and the business he is transacting, *Roberts v. Stith*, 383 *P. 2d* 14 (*Okl. Sup. Ct.* 1963); term "insane" means such a condition of mental derangement as to actually bar sufferer from comprehending rights which he is otherwise bound to know, *Valisano v. Chicago & N. W. Ry. Co.*, 247 *Mich.* 301, 225 *N. W.* 607, 608 (*Sup. Ct.* 1949); a finding that a person was incapable of caring for his property or transacting business or understanding the nature and effect of his acts was equivalent to a finding that he was "insane" within the meaning of the statute of limitations, *Pearl v. Pearl*, 177 *Cal.* 303, 177 *P.* 845 (*Sup. Ct.* 1918).

In our view after considering the authorities we conclude that "insane" in the statute of limitations means such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action.

We note these caveats if the trial court bars said statute. The trial court's findings of plaintiff's insanity and defend-

ant's causation shall not be *res judicata* at the subsequent trial before a jury. Nor should the jury be told of such findings.

Reverse and remand. No costs.

PROCTOR, J. (concurring). The majority holds that if, as a result of defendant's act, a plaintiff becomes insane at any time before the period of limitations expires, the running of the period of limitations shall be suspended. I do not believe that the resolution of the case before us requires such a radical departure from the language of the statute or from the ancient and settled rule, in this State and many others, that once the period of limitations commences to run a subsequent disability does not interrupt it. See, *e g.*, *Valente v. Boggiano*, 107 *N. J. L.* 456 (*E. & A.* 1930); *Freeman v. Conover*, 95 *N. J. L.* 89 (*E. & A.* 1920); *Clark v. Richards*, 15 *N. J. L.* 347 (*Sup. Ct.* 1836); Annotation 41 *A. L. R. 2d* 726 (1955).

The applicable statute provides:

"If any person entitled to * * * the [actions] specified in [§ 2A:14–2] * * * is or shall be, at the time of any such cause of action * * * accruing * * * insane, such person may commence such action * * * within such time as limited by [§ 2A:14–2], after his coming to or being of * * * sane mind." *N. J. S.* 2A:14–21.

A literal interpretation of the above language would exclude its benefit to any plaintiff whose insanity results from the injury complained of, since it will be technically true that an injury which causes insanity must necessarily precede the insanity. Perceiving the harshness of literal interpretation of similar statutory language, the Minnesota Supreme Court, in *Nebola v. Minnesota Iron Co.*, 102 *Minn.* 89, 112 *N. W.* 880 (1907) adopted the rule that when the injury and the resulting insanity occur on the same day, the two events will be considered legally simultaneous. See also *Pannell v. Glidewell*, 146 *Miss.* 565, 111 *So.* 571 (*Sup. Ct. Miss.* 1927); *Taylor v. Houston*, 93 *U. S. App. D. C.* 391, 211 *F. 2d* 427, 41 *A. L. R. 2d* 724 (*D. C. Cir.* 1954); *Weinstock v. Eissler*, 224 *Cal. App. 2d* 212, 36 *Cal. Rptr.* 537, 550 (*D. Ct. App.* 1964).

But see *Roelefsen v. Pella*, 121 *Iowa* 153, 96 *N. W.* 738 (*Sup. Ct.* 1903).

The same-day rule of *Nebola, supra,* while it avoided a harsh result in that case, draws an arbitrary line which fails to protect a plaintiff who, as a practical matter, cannot be expected to take the preliminary steps necessary to preserve his legal rights within a fraction of a day. I think the proper rule should be: If the interval between the tort and the resulting insanity is so brief that plaintiff, acting with diligence, cannot take preliminary steps to enforce his legal rights, then the defendant is estopped from asserting that the statute of limitations has commenced to run. *Cf. Taylor v. Houston,* 93 *U. S. App. D. C.* 391, 211 *F. 2d* 427, 428–429, 41 *A. L. R. 2d* 724 (*D. C. Cir.* 1954). This rule would require that the insanity occur soon after the accident. It would recognize the equitable doctrine that a defendant should not benefit from his own wrongful act. Yet the settled rule of law —that once the period of limitations commences to run, a subsequent disability will not interrupt its course—will be preserved. As I understand the majority opinion, its rule would suspend the running of the period of limitations during the plaintiff's insanity even though that insanity did not occur until one year and eleven months after the accident, during which period the plaintiff was perfectly capable of enforcing his rights. It is one thing to interpret a statute so as to avoid requiring a plaintiff to perform an impossible act. It is quite another to stretch the statute to reach a rule which would benefit a plaintiff who is sane and capable of enforcing his legal rights during a period of time sufficient for him to do so. I have always thought that the primary purpose of the statute of limitations was to protect defendants from the unexpected enforcement of stale claims by plaintiffs who fail to use reasonable diligence in asserting their claims.

The rule I have suggested above is all that is necessary to preserve the plaintiff's cause of action here. The case came before this Court on plaintiff's appeal from a summary judgment in favor of defendant. Other than the pleadings, the

only matter considered by the trial court was the deposition taken from the plaintiff. The deposition did not reveal, nor did plaintiff contend before this Court, that there is any basis for doubting the plaintiff was sane prior to the accident. Nor is there a genuine issue of material fact as to plaintiff's sanity on the day of the accident. But shortly thereafter, while confined in the hospital, she noticed physical symptoms similar to those which accompanied her previous mental ailment in 1942. Furthermore, her deposition reveals that she received psychiatric care at Mountainside Hospital within three weeks of her accident. Thus, at this juncture of the case I cannot say that there is no genuine issue of material fact as to whether the plaintiff's insanity (which at this posture of the case I must assume resulted from the accident) occurred so soon after the accident that she, acting with diligence, could not have taken the preliminary steps to preserve or effectuate her legal rights. Therefore, summary judgment for the defendant should not have been granted.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices HALL and HANEMAN—2.