**In re BERNHEIM LITIGATION.**

No. 00–6297 (WGB).

United States District Court, D. New Jersey.

Feb. 28, 2003.

Andrew Bernheim, South Orange, NJ, pro se.

Christopher Gengaro, Esq., Lentz & Gengaro, West Orange, NJ, for Martin Jacobs, Alvin Trenk, Steven Trenk, Air Pegasus, Inc., Techtron, Inc. and Continental Choice Care, Inc.

John C. Whipple, Esq., Morristown, NJ, for Jeffrey Claman and Township Village Associates.

## OPINION

BASSLER, District Judge.

Defendants move for summary judgment. The Court previously determined that it had subject matter jurisdiction over the first action, Civ. No. 00–6297(WGB), ("First Action") pursuant to 28 U.S.C. § 1334 because the Complaint alleges violations of the United States Bankruptcy Code and in particular 11 U.S.C. § 362(h) thereof. The Court has original subject matter jurisdiction over the second action, Civ. No. 02–935(WGB), ("Second Action") pursuant to 28 U.S.C. § 1331 (federal question). The Court grants Defendants' motion for summary judgment.[1]

## BACKGROUND AND PROCEDURAL HISTORY

Pro se Plaintiff L. Andrew Bernheim ("Bernheim")[2] filed two separate Complaints against an overlapping group of Defendants. The Court consolidated the two actions by Order dated February 28, 2003, but will describe the procedural history of each action separately.

### I. First Action

Bernheim filed his first Complaint on December 29, 2000. The Complaint alleges that after Bernheim had filed for Chapter 11 Bankruptcy, a group of individuals actively solicited the sale of his equitable interest in a partnership called Township Village Associates ("TVA"). These individuals, Defendants Dr. Martin Jacobs, Steven Trenk, Alvin Trenk and Jeffrey Claman ("Individual Defendants"), knew that Bernheim was a debtor in Chapter 11 proceedings. According to Bernheim, the Individual Defendants encouraged two other individuals (not named as Defendants) to sell Bernheim's TVA partnership interest to the Individual Defendants. Bernheim claims that by soliciting this sale, the Individual Defendants violated 11 U.S.C. § 362(h) and 18 U.S.C. §§ 152 and 153.

The first Complaint also alleges four state law causes of action under the doctrine of pendent jurisdiction: (1) tortious interference with contract; (2) fraudulent conversion of Bernheim's property in the form of his TVA partnership interest; (3) unjust enrichment; and (4) creation of a constructive trust.

Defendants moved to dismiss the first Complaint under Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 12(b)(7) respectively for lack of subject matter jurisdiction, failure to state a claim and failure to join indispensable parties. In an Opinion and Order dated August 28, 2001, the Court denied the motion without prejudice. One of Defendants' arguments in support of dismiss-

---

1. Bernheim also raises the argument in his Opposition to Defendants' motion for summary judgment that John C. Whipple, Esq., should be disqualified as the attorney for Defendants Claman and Township Village Associates because of an inherent conflict of interest between the two Defendants. Although Bernheim has not formally filed any motion to disqualify, the Court has considered the issue and finds Bernheim's objection premature at this stage in the proceedings.

2. Although Bernheim represents himself, he has appeared before this Court several times with "ad hoc" New York Counsel and once with New Jersey counsel, appearing as a "friend." Bernheim has had and continues to have legal assistance in this matter.

al under Rule 12(b)(6) was that Bernheim's state law claims of tortious interference with contract and fraudulent conversion of property were barred by the applicable New Jersey six-year statute of limitations. *See* N.J. Stat. Ann. § 2A:14–1. Bernheim argued that the statute of limitations was tolled because he had been adjudged insane during a period that encompassed the date his cause of action accrued. The Court concluded that it could not yet rule on the statute of limitations defense because there was "insufficient evidence in the record for the Court to determine when, under New Jersey's discovery rule, Plaintiff's cause of action accrued." (August 28, 2001 Op. at 8–9.)

Bernheim and the Trenk Defendants then entered into settlement negotiations. On October 25, 2001, Bernheim wrote to the Court that he had settled with prejudice all of his claims against Defendants Jacobs, Alvin and Steven Trenk, Continental Choice Care, Inc., Techtron Inc. and Air Pegasus, Inc. (*See* July 30, 2002 Op. at 4.) In the Settlement Agreement and Stipulation of Dismissal, which did not include Defendants Claman or TVA, Bernheim released the other Defendants in exchange for ten dollars, a general release and covenant not to sue, an indemnification agreement and "other good and valuable consideration." The Court did not approve the Settlement Agreement or Stipulation of Dismissal because of concerns over whether the Agreement had been entered in good faith and without overreaching by Defendants. (*See* July 30, 2002 Opinion at 4 and 13.)

On November 29, 2001, Bernheim moved to enforce or alternatively avoid the alleged Settlement Agreement ("Agreement"). Defendants (not including Claman or TVA) cross-moved to dismiss the Complaint based on the same Agreement. In an Opinion and Order dated July 30,

2002, the Court denied both motions without prejudice and scheduled an evidentiary hearing regarding the Agreement and the circumstances under which it had been entered into by the parties.

Following the hearing on the motions to enforce or alternatively avoid the Settlement Agreement, the Court issued a letter-order notifying the parties that the Court would entertain either a renewed motion to dismiss or motion for summary judgment. (*See* November 8, 2002 Letter–Order.) If the Defendants chose to renew their motion to dismiss, the Court was inclined to treat it as a motion for summary judgment and to give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Fed.R.Civ.P. 12(c).

As an alternative to proceeding according to the steps outlined in Rule 12(c), the Court invited the Defendants to file a motion for summary judgment. To that end, the Court set forth a schedule for the submission of briefs and affidavits by both parties. The Court held oral argument on the Defendants' motion for summary judgment on February 20, 2003.

## II. *Second Action*

Bernheim filed his second Complaint on March 4, 2002. He filed an Amended Complaint as of right on March 6, 2002 ("RICO Complaint"). The Amended Complaint asserts federal question jurisdiction under 28 U.S.C. § 1331 and claims violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b) and (c), and the corresponding New Jersey racketeering statute, N.J. Stat. Ann. § 2C:41–2(b) and (c). The Amended Complaint notably alleges the very same facts as the first Complaint described above. While the RICO Complaint does not name Claman as a Defendant, it does name an additional seven

Trenk family members and some of their estates as Defendants, causing the Trenk Defendants to label Bernheim a "litigation terrorist."

On April 8, 2002 Defendants moved to dismiss the RICO Complaint. In support of their motion they argued that the alleged October 25, 2001 Settlement Agreement mandated dismissal of the RICO Complaint. Before ruling on the motion to dismiss and after the evidentiary hearing regarding enforcement of the Settlement Agreement, the Court issued the November 8, 2002 Letter–Order (described above) setting forth the schedule for summary judgment submissions regarding both actions instituted by Bernheim. The Defendants named in the RICO Complaint have also moved for summary judgment with respect to the RICO action. The oral argument held on February 20, 2003 therefore encompassed both actions.

### III. *Undisputed Facts*

#### A. *Bernheim and TVA*

Bernheim and two non-party individuals named Milford Inganamort and Raymond Uzzi were shareholders in an entity known as LIB Realty, Inc. ("LIB")(Bernheim Cert., ¶ 2.) Bernheim and Inganamort allegedly entered into a shareholder agreement providing that both individuals would share a beneficial half-interest "in whatever ownership interest in a real estate project was held in the name of either Bernheim or Inganamort." (Compl., ¶ 18.) Bernheim allegedly also entered into an agreement with Uzzi in which Uzzi agreed to purchase from Inganamort and Bernheim one-third of their respective stock interests in various corporations and partnerships, including LIB and TVA. (Compl., ¶ 19.)

Through LIB and its predecessors, Inganamort and Bernheim managed an apartment complex originally owned by Jackie Gleason and known as Township Village. (Bernheim Cert., ¶ 6; Bernheim SOF at 3, ¶ 1.) Aware that Gleason wanted to sell Township Village, Bernheim "brought the deal" to Defendants Alvin and Steven Trenk. The following events ensued:

> [LIB] and the Trenks negotiated that Inganamort, Uzzi and [Bernheim] would receive a 2.2% partnership interest in the TVA partnership to be formed. Uzzi later transferred his 2.2% interest to [Bernheim], giving [Bernheim] a 4.4% interest which was held in Inganamort's name as nominee.

(Bernheim Cert., ¶ 6.)

TVA was formed as a New Jersey partnership in 1981 to purchase the Township Village apartment complex. (Bernheim Resp. at 3, ¶ B1.) TVA consisted of 24 partners. (*Id.* at 3, ¶ B2.) In January, 1984, TVA purchased the 6.6% interest in the partnership held in Inganamort's name for $122,301. (*Id.* at 3, ¶ B4.) Bernheim claims that he had a "direct beneficial interest" of 4.4% in this TVA interest "held by Inganamort" and then sold by Inganamort back to the TVA partnership. (*Id.* at 3, ¶ B11.)

Bernheim alleges that Defendants Jacobs, the Trenks and Claman were aware that Bernheim held a 4.4% interest in TVA. (Compl., ¶ 22.) These Defendants were also aware that Bernheim was a Chapter 11 debtor with pending bankruptcy proceedings. (*Id.,* ¶ 24.) In fact, Bernheim "expressly objected to any efforts to sell [his TVA] interest," claiming "that the sale of any such interest required the approval of the Bankruptcy Court." (*Id.,* ¶ 25.)

Because Bernheim objected to the sale of his beneficial interest, Steven Trenk asked one of the TVA partners, Jeffrey Claman, if Claman "would consider buying

only that part of Inganamort's interest which was beneficially owned by [Claman] while allowing [Bernheim] to stay in the transaction." (Bernheim Cert., ¶ 7.) Although Claman believed Bernheim "had an interest in the property or project through Inganamort," Claman indicated that "he intended to buy the full interest" held in Inganamort's name "at what he thought was a good price." (*Id.*)

Bernheim wrote to Claman attempting to stop the sale of Bernheim's beneficial interest in TVA. (*Id.*, ¶¶ 8, 10.) Around the time of the actual sale Bernheim "spoke to Claman and told him that [Claman] needed Bankruptcy Court approval for any sale." (*Id.*, ¶ 11.) The TVA partnership, which included as partners individual Defendants Jacobs, the Trenks and Claman, nevertheless purchased from Inganamort the 6.6% interest in TVA held in Inganamort's name. (Compl., ¶ 28; Bernheim Cert., ¶ 12.)

Jacobs, the Trenks and Claman thereafter sold their total interest in TVA to investors for $7,000,000. TVA eventually sold the Township Village property in October 1985. (Bernheim Resp. at 3, ¶ B6.) TVA did not pay Bernheim any money when it sold its property. *Id.* Bernheim contends that based on the sale price of the property ($7 million), his alleged 4.4% interest in TVA "was actually worth in excess of $300,000." (Compl., ¶ 28.)

### B. *Bankruptcy Proceedings and Judge Gindin's 1985 and 1999 Orders*

In 1982, Bernheim filed a personal bankruptcy petition. In 1983, three entities he owned and controlled also filed bankruptcy petitions. All four bankruptcy matters were consolidated (the "bankruptcy proceedings") before United States Bankruptcy Judge William H. Gindin. (Bernheim Resp. at 4, ¶¶ B13–B15.)

In 1985, the attorneys for the debtors in the bankruptcy proceedings filed a motion to withdraw as counsel. On October 31, 1985, Judge Gindin signed an Order granting the attorneys' motion to withdraw as counsel and containing the following language:

> The movants have submitted certifications showing that L. Andrew Bernheim . . . has been unwilling or unable to cooperate with the attorneys for the debtors. The record of this Court shows that [Bernheim] has been unable or unwilling to comply with a direction or order of this Court on several occasions and that he was last brought before this Court by warrant for his arrest. As a result . . . it has become impossible for the attorneys for the debtor to perform their professional roles as attorneys and officers of this Court. . . . Nonetheless, the Court is of the opinion that the debtors cannot properly be left without counsel representing them in this proceeding. . . . Robert A. Baime, Esq. is hereby appointed as guardian *ad litem* for L. Andrew Bernheim for purposes of these proceedings. Effective upon the entry of this order, counsel for the debtors shall take their instructions soley [sic] from the guardian *ad litem.*

(1985 Order at 1–2, 4, Whipple Aff., Ex. B.) Judge Gindin therefore appointed Baime as guardian ad litem ("GAL") "for purposes of these proceedings"—i.e., the four consolidated bankruptcy proceedings captioned on the first page of the 1985 Order.

In 1989, Bernheim filed an Adversary Proceeding in his individual capacity in the Bankruptcy Court before Judge Gindin. (Bernheim Resp. at 4, ¶ B26; Gengaro Cert., Ex. D.) Bernheim filed this Proceeding against Inganamort, Uzzi and LIB and sought to recover the value of his beneficial interest in TVA. Michael R. Perle, Esq., and not the GAL appointed by Judge

Gindin in 1985, represented Bernheim in the Proceeding. Defendants assert, and Bernheim does not contest, that the formerly appointed GAL had no involvement in the Adversary Proceeding. (Bernheim Resp. at 4, ¶¶ B27–B31.)

The Adversary Proceeding continued into 1990. At a hearing held on July 18, 1990, while Bernheim was present in the Court with his lawyer, Steven Trenk testified regarding Bernheim's claimed beneficial interest in TVA. (*Id.*, ¶¶ B32–B33.) Bernheim's lawyer, Perle, marked a copy of the closing statement of the TVA property into evidence. Perle identified the closing statement in open court and in front of Bernheim as "dated October 31, 1985." (Tr. 25:7–9, Gengaro Cert., Ex. E; Bernheim Resp. at 4, ¶ B36.) Bernheim does not contest that he knew that TVA sold the Township Village property on October 31, 1985. (Bernheim Resp. at 3, ¶ A4.)

In addition to commencing the 1989 Adversary Proceeding while represented by Perle, Bernheim filed 10 other adversary proceedings in the Bankruptcy Court in his own name and without reference to a GAL. All of these adversary proceedings were filed after Judge Gindin had signed the 1985 Order appointing a GAL "for purposes of [the four consolidated bankruptcy] proceedings." (1985 Order at 4, Whipple Aff., Ex. B.) Bernheim also filed 60 affidavits or certifications in the bankruptcy proceedings before Judge Gindin. (Gengaro Cert., Ex.'s C, D, F, G and H; Bernheim Resp. at 4, ¶ B40.)

In his Complaint, Bernheim states that his GAL appointed in 1985 "was released in short order." (Compl., ¶ 5.) In 1999, Bernheim nevertheless filed a motion to terminate the need for the appointment of a GAL. (Bernheim Resp. at 4, ¶ B42.) Bernheim drafted and submitted a proposed order terminating the need for appointment of a GAL which Judge Gindin signed on December 13, 1999 ("1999 Order").

The 1999 Order declared Bernheim to "once again be sane, competent and no longer in need of guardianship as of November 22, 1999." (1999 Order at 2, Gengaro Cert., Ex. J.) The Order also states that the Court had "considered the psychiatric report of Mathias R. Hagovsky, PH.D. as well as other papers submitted by the debtor." (*Id.* at 2.) The 1999 Order made the following additional declarations:

When the Court appointed [Baime] to be Bernheim's [GAL] in 1985 ... this Court found that Bernheim lacked the ability and capacity, due to mental affliction, to care for his property or transact business, understand and pursue his lawful rights, or understand the nature or effects of his acts; although the Court finds that the debtor's mental affliction as described above continued unchanged from September 1, 1985 through November 22, 1999 and, indeed, personally observed behavior on the part of Bernheim that resulted in the Court's firm belief that a guardian was necessary, and that neither the [GAL] ... nor any other party in interest ever challenged or appealed necessity [sic] and appointment of a[GAL] for Bernheim, now based on the psychiatric report of [Hagovsky, Ph.D] dated November 22, 1999 and this Court's personal observation of a change in Bernheim's present behavior and comportment showing him to be normal and sane, the Court now finds Bernheim to once again be sane and fully possessed of the ability and capacity to care for his property and transact business, understand and pursue his lawful rights, and understand the nature and effects of his acts.... Because various independent parties ... will not proceed to settle without this

Order [or] may be relying upon this Order in settling claims with debtor [Bernheim], the Court holds that this Order's terms, provisions and findings cannot in any way or under any circumstances later be vacated, modified, altered, or revisited in any respect.... This Order shall be binding upon all creditors, trustees and their attorneys, and parties in interest in each of the four above captioned administratively consolidated cases, all adversary proceedings (whether closed or pending) in the four above-captioned cases, and in all related cases or proceedings (whether closed or pending).

(1999 Order at 2–4.)

Based on the language of the 1999 Order, Bernheim contends that he was adjudicated insane by Judge Gindin in 1985. (*See* Bernheim Opp. at 14.) Defendants submit that despite the language of the 1999 Order, Judge Gindin did not determine Bernheim to be insane within the meaning of the New Jersey tolling statute or for purposes of this civil litigation. According to Defendants, Bernheim's present cause of action accrued at the very latest on July 18, 1990, over 10 years and five months before he filed his first Complaint in this Court.

## ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate under the following circumstances:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir.1998). The court does not "weigh the evidence and determine the truth of the matter," but merely "determine[s] whether there is genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As the *Anderson* Court explained:

To raise a genuine issue of material fact, ... the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir.1992).

While the court must construe facts and inferences in the light most favorable to the nonmoving party, a motion for summary judgment is designed to go beyond the pleadings. No genuine issue of material fact remains when the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To resist a properly supported motion for summary judgment, the movant "must point to concrete evidence in the record that supports each and every element of his case." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir.1995)(citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Such concrete evidence does not include self-serving conclusions, unsupported by specific facts in the record. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa.1988).

## II. *Applicable Limitations Periods*

### A. *First Action*

■ Bernheim's first Complaint alleges common law claims of tortious interference with contract, fraudulent conversion of property and unjust enrichment. New Jersey provides a six-year statute of limitations applicable to certain actions at law, including:

> any tortious injury to real or personal property ... [the] taking, detaining or converting [of] personal property ... or [the] recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account....

N.J. Stat. Ann. § 2A:14–1.

The Complaint also alleges that Defendants violated the automatic stay provision of 11 U.S.C. § 362(h).[3] Congress did not establish any limitations period governing actions under section 362(h).

Defendants argue that when a federal statute lacks a limitations period, federal courts borrow state limitations periods governing "analogous" state causes of action. While federal courts do borrow analogous state limitations periods, they also sometimes borrow analogous federal limitations periods, apply no limitation period, or apply the doctrine of laches. *See, e.g.,* Patrick McDowell, *Limitation Periods for Federal Causes of Action after the Judicial Improvements Act of 1990,* 44 Vand. L.Rev. 1355 (1991).[4]

In *Nelson v. Post Falls Mazda,* 159 B.R. 924, 925 (Bankr.D.Idaho 1993), the court noted that it had "not found any reported case imposing a statute of limitations on section 362(h)." This Court is also unable to find such a case. The *Nelson* court denied defendants' motion for summary judgment on statute of limitations grounds because they "failed to demonstrate that [the] action was barred by *any* statute of limitations." *Id.* (emphasis added). The court noted in dicta that defendants might successfully assert a laches defense in an appropriate case alleging an automatic stay violation, "particularly where the action is brought after the dismissal or expiration of the term of the [underlying bankruptcy] case." *Id.*

Bernheim contends that the Court should borrow the 20–year limitations peri-

---

**3.** The Complaint also alleges violations of 18 U.S.C. §§ 152 and 153 which prohibit respectively (1) fraudulent receipt or transfer of a debtor's property or concealment of assets after the filing of Chapter 11 bankruptcy and (2) embezzlement against a debtor's estate. Bernheim fails to explain how Defendants violated these statutes and all parties fail to address their applicable limitations periods. The Court declines to address this issue sua sponte.

**4.** In response to recommendations by the Federal Courts Study Committee, Congress enacted 28 U.S.C. § 1658, imposing a four-year limitation on civil actions arising under federal statutes containing no specific limitations periods. This new "general fallback statute of limitations," however, "applies only to actions arising under statutes enacted after December 1, 1990." *Id.* at 1358. Section 362(h) of Title 11 was enacted in 1984. *See* Pub.L. No. 98–353, § 304,98 Stat. 352 (1984).

od set forth in N.J. Stat. Ann. § 2A:14–7 and apply it to his section 362(h) automatic stay violation claim. (Bernheim Opp. at 9.) He asserts the 20–year state statutory limitations period is most analogous to his section 362(h) claim because his "TVA interest relates to underlying real property" and the action "is really one relating to the wrongful appropriation of land."

The Court disagrees. Bernheim concedes that his claims of tortious interference with contract, fraudulent conversion of property and unjust enrichment are governed by the six-year statutory limitations period. The Complaint, furthermore, seeks damages for (1) the alleged violation of the automatic stay provision of the bankruptcy code and (2) tortious injury to his property and/or contractual rights. Bernheim did not hold title in any legal or equitable sense to the real property known as Township Village. If Bernheim had any equitable interest or contractual rights, he possessed them in the form of his alleged 4.4% beneficial interest in the TVA partnership. An equitable or contractual interest in a partnership could not give rise to "an action at law for real estate" as envisioned by N.J. Stat. Ann. 2A:14–7. The question remains what statute of limitations, if any, the Court must apply to Bernheim's section 362(h) claim.

Section 362(h) allows "[a]n individual injured by any willful violation of a stay" to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances ... punitive damages." The automatic stay provision of section 362 serves the interests of both debtors and creditors. *Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991), *opinion reinstated on rehearing*. First, the stay gives a Chapter 11 debtor "a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions."

*Id.* (quoting *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982)). Second, the stay protects creditors by insuring an orderly and equitable distribution of assets to creditors. *Id.*

In *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir.1991), the Court of Appeals held that section 362(h) creates a cause of action that survives the termination of the underlying bankruptcy. Because the statute is silent regarding any limitation period, the *Price* court declined to impose a court-crafted "limit on the breadth of the provision, however appealing the policy considerations." *Id.* The court also noted in dicta that while a claim for damages under section 362(h) should "probably" be referred to the bankruptcy court, and even finally determined by a bankruptcy judge as a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), "after a bankruptcy is over, it may well be more appropriate to bring suit in district court, especially when other claims are attached." *Id.* at 832 n. 1. Neither the *Price* court, however, nor any other court of which this Court is aware, has applied an analogous state statute of limitations to a section 362(h) claim.

The crux of this action—whether or not Bernheim indeed had a 4.4% beneficial interest in TVA—lies in nonbankruptcy law. The Court assumes for purposes of the summary judgment analysis that Bernheim did have a 4.4% beneficial interest in TVA, but ultimate resolution of the issue depends on the application of New Jersey common law. If Bernheim had no beneficial interest in TVA, then Inganamort's sale of his own 6.6% interest in TVA, and Defendants' subsequent sale of the Township Village property without compensating Bernheim, could not have "injured" Bernheim, nor constituted a "willful violation" of the automatic stay. 11 U.S.C. § 362(h). The nature of Bernheim's al-

leged beneficial interest is therefore paramount because its existence determines the possibility of liability under all claims, including any violation of the automatic stay under the bankruptcy code.

Based on the character of Bernheim's claims, the Court concludes that the six-year New Jersey limitations period is the most appropriate statute to apply to the section 362(h) claim. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)("[b]y adopting the statute governing an analogous state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action"); *see also International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corporation,* 383 U.S. 696, 704–5, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)(determining timeliness of suit brought under federal collective bargaining statute "by reference to the appropriate state statute of limitations" and finding the claim to most "closely resemble[ ] an action for breach of contract cognizable at common law"); *Burgh v. Borough Council of the Borough of Montrose,* 251 F.3d 465, 471–72 (3d Cir. 2001)("if Congress has created a cause of action and not specified the period of time within which a claim must be asserted, a court may infer that Congress intended state limitations periods to apply and may borrow such periods and engraft them onto the federal statute").

### B. *Second Action*

■ Although the Defendants argue that all of Bernheim's actions are untimely, Defendants in the Second Action fail to address the proper limitations period applicable to actions under the federal RICO or analogous New Jersey statutes. In his RICO Amended Complaint, Bernheim asserts violations of 18 U.S.C. § 1962(b) and (c) and N.J. Stat. Ann. § 2C:41–2(b) and (c). By borrowing from an analogous federal statute, the Clayton Act, the Supreme Court adopted a four-year limitations period governing RICO actions. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 151, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). A four-year limitations period also applies to the analogous New Jersey statute. *Matter of Integrity Ins. Co.,* 245 N.J.Super. 133, 137, 584 A.2d 286, 288 (1990).

### III. *Accrual of Bernheim's Claims*

■ Ordinarily, at the moment a plaintiff is wronged or injured, his cause of action is said to "accrue" and the limitations period begins to run. *Amland Properties Corp. v. Aluminum Company of America,* 808 F.Supp. 1187, 1190 (D.N.J.1992)(quoting *Lopez v. Swyer,* 62 N.J. 267, 274, 300 A.2d 563 (1973)). Under an equitable rule developed to avoid harsh results, courts have held under certain circumstances that a cause of action does not accrue "until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Knauf v. Elias,* 327 N.J.Super. 119, 124, 742 A.2d 980 (1999).

■ Similarly, for RICO claims, the Third Circuit has adopted the "injury discovery rule whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 250 (3d Cir.2001)(internal quotations omitted).

■ TVA and Defendants sold the Township Village property without compensating Bernheim for his alleged beneficial interest on October 31, 1985. Even before the sale, Bernheim "spoke to Claman and told him [he] had a beneficial

interest in the Inganamort TVA interest." (Bernheim Cert., ¶ 10). Bernheim was therefore arguably put on notice before the sale that an imminent harm to his interest was about to occur. Bernheim cannot deny that he was at least acting like a person of reasonable diligence and intelligence, considering that he told Claman that Claman "needed Bankruptcy Court approval for any sale." (*Id.*, ¶ 11.) The Court is convinced that Bernheim's current cause of action accrued on October 31, 1985.

Not only should Bernheim have known he had a basis for an actionable claim in 1985, but he irrefutably learned the precise closing date of TVA's sale of the Township Village property during the 1990 hearing before Judge Gindin during which Steven Trenk testified and Bernheim was present. At this hearing, Bernheim's lawyer, Perle, identified the sale date of the TVA property and marked the closing statement into evidence. Although Bernheim had not yet sued the Defendants, he had in 1989 already sued Inganamort and Uzzi over the same transactions at issue.[5] Bernheim cannot deny that in 1990, he knew all of the underlying facts which he has used to support his new complaints against different defendants.

## IV. *Tolling of Statute of Limitations Due to Alleged Insanity*

New Jersey law provides that the statute of limitations governing certain actions may be tolled if a plaintiff is insane when the cause of action accrues. N.J. Stat. Ann. § 2A:14–21. If the plaintiff is insane at the time of accrual, the relevant statute of limitations does not begin to run until the plaintiff returns to a state of "sane mind." *Id.*

## A. *New Jersey Law Governing Whether Plaintiff Is Insane for Tolling Purposes*

 A plaintiff is insane for tolling purposes if he suffers from "such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action." *Todish v. CIGNA Corp.*, 206 F.3d 303, 306 (3d Cir.2000)(quoting *Kyle v. Green Acres at Verona, Inc.*, 44 N.J. 100, 113, 207 A.2d 513, 521 (1965)). New Jersey courts have concluded that "the aim" of the tolling provision "is to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights." *Sobin v. M. Frisch & Sons*, 108 N.J.Super. 99, 104, 260 A.2d 228 (App.Div.1969), *certif. denied*, 55 N.J. 448, 262 A.2d 702 (1970).

The *Todish* decision is particularly instructive. In that case, the plaintiff had a history of mental difficulties and had been constantly under treatment by psychiatrists, hospitalized, homeless and suicidal. *Todish*, 206 F.3d at 306. The Social Security Administration found her mentally disabled for purposes of qualifying for Social Security benefits. *Id.* at 307. Todish then brought untimely breach of contract claims in the district court and argued that the six-year statute of limitations should be tolled because she was "insane" within the meaning of New Jersey Statute 2A:14–21. *Id.* at 305.

Unconvinced, the Third Circuit affirmed the district court's grant of summary judgment against Todish. The court explained:

> a fact finder could not reasonably infer from the evidence presented that Todish's mental impairments prevented her from understanding her legal rights or

---

**5.** Bernheim settled the 1989 Adversary Proceeding but has not produced any evidence regarding the terms of that settlement. (*See* February 20, 2003 Tr. at 7:14—8:14.)

instituting legal action during the six-year statute of limitations period. *Id.* at 306. The court listed "the actions that [Todish's] own affidavit reveals that she was able to take," such as attempting to hire legal counsel, obtaining transcripts of hearings, inquiring about appealing an unfavorable Social Security decision and applying for disability benefits. The court found such actions demonstrated that despite her mental impairments, Todish retained the ability to understand her legal rights and institute legal action within the limitations period. *Id.* The Court concluded:

> the lack of understanding that would render [Todish] "insane" must have derived from her mental illness and placed her at a level of understanding below that of the usual plaintiff, of whom we require diligence in discovering the legal wrong.

*Id.* at 306–07. In *Todish,* therefore, the Third Circuit articulated a narrow and specific definition of insanity for New Jersey tolling purposes.

## B. *Evidence of Bernheim's Alleged Insanity*

■ A defendant raising the statute of limitations as an affirmative defense has the burden of showing that the limitations period expired before commencement of the action. *See* 51 Am.Jur.2d Limitation of Actions § 3 (2003). Once the defendant makes a prima facie showing that the applicable period has expired, the plaintiff must come forward with sufficient evidence to prove his disability tolled the statute of limitations. Because "[t]he law presumes sanity rather than insanity, and competency rather than incompetency," 9 A.L.R.2d 964, 1950 WL 7138 Proof of Unadjudged Incompetency Which Prevents Running of Statute of Limitations § 4 (1950), "the plaintiff must demonstrate that his or her condition continually pre-

vented the timely prosecution of the lawsuit." *See* 51 Am.Jur.2d Limitation of Actions § 234 (2003).

■ The only evidence Bernheim offers to show that he was "insane" for tolling purposes are the 1985 and 1999 Orders signed by Judge Gindin. The 1985 Order appointing a guardian ad litem "for purposes of" the four consolidated bankruptcy proceedings makes no finding of insanity or incompetency. (1985 Order, Whipple Aff., Ex. B.) Bernheim posits that the 1999 Order "is conclusive evidence of [his] insanity which cannot now be collaterally attacked." (Bernheim Opp. at 15.) The language of an Order drafted by Bernheim and signed by the Bankruptcy Court Judge, however, absent any corroborating evidence, is not conclusive evidence of insanity for tolling purposes. Furthermore, the 1999 Order fails to raise a genuine issue of material fact regarding whether Bernheim was capable of understanding and pursuing his legal rights. Persuasive evidence in the record demonstrates that he was so capable.

■ Bernheim asserts that the fact that he "was litigious certainly is not evidence that he 'understood his legal rights.'" (Bernheim Opp. at 15.) Nor, the Court might add, is it evidence that he was insane. Though he knew of the sale of the TVA property during the July 18, 1990 hearing in the Adversary Proceeding before Judge Gindin, Bernheim disputes that he understood at that time "the legal ramifications surrounding the sale of his beneficial interest on October 31, 1985." (Bernheim Resp. at 3, ¶ A4.) The *Todish* court held, however, that "[w]hether [plaintiff] understood the legal points of her case, or even knew how or when to file a civil claim against [defendant] does not determine whether [plaintiff] was insane for tolling purposes." *Todish,* 206 F.3d at

306. One therefore need not understand all of the legal ramifications of a controversy in order to be deemed sane under New Jersey Statute 2A:14–21.

Bernheim also disputes Defendants' assertion that there was no hearing in which he was adjudicated insane. (Bernheim Resp. at 4, ¶¶ B46–B47.) Despite this assertion, Bernheim offers no evidence that there was any hearing regarding his sanity. In response to Defendants' argument that Bernheim has failed to raise a genuine issue of material fact regarding whether he was insane—i.e., unable to understand his legal rights or institute legal action—Bernheim repeatedly quotes the language of the 1999 Order.

The 1999 Order is troubling in its retroactivity. It elaborates and supplements the original 1985 Order appointing a guardian ad litem to such an extent as to suggest inconsistency and inaccuracy. For instance, the 1985 Order does not mention, even in passing, any finding by Judge Gindin that Bernheim was insane or incompetent in any way. The impetus of the 1985 Order was Bernheim's refusal to cooperate "on several occasions" with the Court and his attorneys. (1985 Order at 2, Whipple Aff., Ex. B.) The 1985 Order belies the 1999 Order's statement that "this Court found" in 1985 "that Bernheim lacked the ability and capacity, due to mental affliction, to ... understand and pursue his lawful rights." (1999 Order at 2, Gengaro Cert., Ex. I.) The 1985 Order mentions no such finding.

Even more crucial than the peculiarity of the 1999 Order is the fact that, by its own language, the Order does not contemplate its use as a tolling device in future litigation. The 1999 Order focuses on ensuring the finality of previously settled bankruptcy proceedings and on enabling the parties to be able to settle pending matters without the fear that those matters may be reopened in the future. (*See* 1999 Order at 3, ¶ 4.) The Order declares itself to be binding only on parties in interest in the consolidated bankruptcy cases and adversary proceedings and "in all related cases or proceedings (whether closed or pending)." (1999 Order at 4, ¶ 5.) By its terms, the Order does not purport to apply to litigation to be instituted in the future.

Indeed, Judge Gindin could not have intended the Order he signed in 1999 to allow relitigation of stale claims in a district court fifteen years after the alleged injury. The 1999 Order contains the conclusory finding that "the debtor's [i.e., Bernheim's] mental affliction ... continued unchanged from September 1, 1985 through November 22, 1999." (*Id.* at 2, ¶ 1.) The explained basis for this conclusion is that the Court "personally observed behavior on the part of Bernheim that resulted in the Court's firm belief that a guardian [ad litem] was necessary." (*Id.*) The Court went on to terminate the need for appointment of a guardian ad litem:

> based upon the psychiatric report of Mathias R. Hagovsky, PH.D. *dated November 22, 1999* and this Court's personal observation of a change in Bernheim's present behavior and comportment showing him to be normal and sane.

(*Id.* at 3, ¶ 1.)(emphasis added). A *contemporaneous* psychiatric report issued in 1999, could not retroactively have assessed Bernheim's mental state in October 1985.

The Court concludes that the applicable statutes of limitations were not tolled because Bernheim was not insane within the meaning of the New Jersey tolling statute. That Bernheim was able to understand his legal rights and institute legal action is demonstrated by the extensive record of his litigation activities, the fact that he sought and obtained competent counsel to represent him in the 1989 Adversary Pro-

ceeding, and Bernheim's numerous admissions that he knew and objected to the deprivation of his alleged beneficial interest. A fact finder could not reasonably find from the record evidence that Bernheim suffered from a mental impairment that prevented him from understanding and enforcing his legal rights during the applicable six– or four-year statute of limitations periods.

## V. *Equitable Tolling Due to Fraudulent Concealment*

Bernheim argues that any applicable statute of limitations should be equitably tolled. (Bernheim Opp. at 16.) He asserts the following:

> Bernheim has sworn that Steven Trenk—acting on behalf of all defendants—induced Bernheim into delaying filing his complaint through repeated promises that the defendants would 'make good' on their obligation to Bernheim. Moreover, Steven Trenk's promises were made credible by the fact that, from time to time, he would back [the promises] up by providing Bernheim with money.

(Bernheim Opp. at 16.) Bernheim's allegations imply that Defendants fraudulently concealed their wrong by "inducing" Bernheim to "delay filing his complaint."

■ A plaintiff may avoid application of the statute of limitations when he can prove that the defendants "concealed the conduct complained of," thereby preventing a diligent plaintiff from discovering "the facts that form the basis of [his] claim." 51 Am.Jur.2d Limitation of Actions § 184 (2000). Similarly, the Supreme Court has held that the RICO limitation period can be tolled where a pattern of racketeering activity "remains obscure in the face of plaintiff's diligence in seeking to identify it." *Rotella v. Wood,* 528 U.S. 549, 561, 120 S.Ct. 1075, 145 L.Ed.2d 1047

(2000). To toll the limitation period, a plaintiff must be able to prove that (1) defendants actively misled the plaintiff (2) so as to prevent the plaintiff from recognizing the validity of his claim and that (3) plaintiff's ignorance of his injury is not attributable to his lack of reasonable due diligence in attempting to uncover the facts. *Mathews,* 260 F.3d at 256.

■ Bernheim is not entitled to an equitable tolling of the statute of limitations. Bernheim has been aware of the alleged wrong for 15, or at the very least 10, years. He objected to Defendants' actions 15 years before filing his first Complaint before this Court. He even instituted a proceeding before the Bankruptcy Court regarding the same alleged injury in 1989. Bernheim's decision not to sue Defendants until 2000—whether misguided or not and whether motivated by friendship or the hope of receiving some kind of allegedly promised compensation—did not result from "insanity." Defendants, moreover, did not engage in trickery, in the sense of concealing the fact that the TVA property had been sold and that Bernheim would not receive any profits from that sale.

Bernheim's attempt to use his alleged "insanity" as both a sword and a shield must fail. Statutes of limitations serve to ensure "the security and stability of human affairs created by eventual repose ... [and] prospective defendants' ability to respond to allegations made against them." *Todish,* 206 F.3d at 308 (quoting *Jones v. Jones,* 242 N.J.Super. 195, 203, 576 A.2d 316, 320 (App.Div.1990)). No case better demonstrates the wisdom of that policy than this one.

## CONCLUSION

For the reasons explained above, the Court **grants** Defendants' motion for summary judgment on all claims on the

grounds that they are time-barred. In view of this determination, the Court need not address Defendants' other arguments in support of summary judgment.

### ORDER FOR SUMMARY JUDGMENT

THIS MATTER having come before the Court on Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. Rule 56; and the Court having considered the parties' submissions and heard oral argument on February 20, 2003; and for the reasons stated in the Court's Opinion filed this day; and for good cause shown;

It is on this 28th day of February, 2003 hereby

ORDERED that Defendant's motion for summary judgment is **GRANTED** and judgment is hereby entered for all of the Defendants on all claims; and IT IS FURTHER ORDERED that Defendants' motion to dismiss the RICO Complaint, Civ. No. 02–935(WGB), is hereby **DENIED AS MOOT**; and IT IS FURTHER ORDERED that Plaintiff's motion to enforce the settlement agreement, and Defendants cross-motion to dismiss the Complaint based on the settlement agreement in Civ. No. 00–6297(WGB) are also both **DENIED AS MOOT**. The Clerk of the Court is hereby ordered to close this case.